**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0147n.06

**Nos. 08-4165/09-3412**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff–Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DAMIEN McDOUGAL, | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant–Appellant. | ) | |

**FILED**
**Mar 10, 2010**
LEONARD GREEN, Clerk

Before:      KEITH, BOGGS, and GRIFFIN, Circuit Judges.

PER CURIAM.   Damien McDougal and Marcus Holt robbed the Fifth Third Bank in

Trotwood, Ohio.  As they entered the bank at 3:02 p.m. on January 11, 2008, Holt, wearing a white

bandanna, a black knit cap, a blue hooded sweatshirt, blue jeans, black tennis shoes, and dark-

colored gloves, brandished two semi-automatic handguns, pointed them at a customer's head, and

demanded money.

McDougal, who was wearing a black hockey mask, a gray hooded sweatshirt, tan pants, white

gloves, and black tennis shoes, vaulted the teller's counter and transferred currency from two cash

drawers into a blue bag he had brought with him.  As he and Holt fled the bank with an estimated

$13,457, one of the customers in the bank attempted to subdue McDougal; McDougal escaped only

after punching the customer in the shoulder.

-1-

The robbers ran from the bank down a bike path and across a creek to get to their getaway car. The Trotwood Police, however, had already been summoned via a 911 call and arrived on the scene within seconds. By the time Holt and McDougal reached their vehicle, they were already precariously close to capture.

Things only went downhill for them from there. A witness on the scene reported seeing two men running to and entering a green vehicle bearing Ohio license plate number DVG-4184, and subsequently fleeing at a high rate of speed with both doors open. A second witness, located some three blocks away, reported that the same vehicle drove behind the residence at 2 Hillgard Street, and further reported hearing what sounded like a collision in the back yard of that residence. Moments later, the witness said, the vehicle re-emerged from behind the residence with only one occupant. The police, meanwhile, had positioned cars at the exit points from the neighborhood into which Holt and McDougal had fled, and were able to observe the car as it attempted to leave. The first cruiser to spot the car activated its emergency lights, and Holt—the car's remaining occupant—attempted to flee in the vehicle. In the course of a fruitless, high-speed chase around the block, Holt's vehicle hit three different police vehicles and was eventually pushed into the front yard of a residence. Holt attempted to flee on foot, but was apprehended before he could leave the yard. An FBI case agent assigned to investigate the robbery would later conclude that, from the time Holt and McDougal fled the bank to the time Holt was arrested, no more than five to ten minutes had elapsed.

Upon searching Holt's car, the police found the mask and gloves that McDougal had been wearing, along with a man's wallet containing McDougal's driver's license and Social Security card. When they investigated the area behind 2 Hillgard Street, they discovered two loaded handguns, clothing consistent with the clothing worn by the bank robbers, and a blue bag containing currency

from the Fifth Third Bank. The currency was stained red by the dye pack that McDougal had also managed to scoop up with the cash.

McDougal was arrested a few hours later. On being questioned by the police, McDougal admitted that he and Marcus Holt had robbed the Fifth Third Bank; that he was the individual who had vaulted the counter and gathered money from the teller's drawers; that he had left the getaway car when it was behind 2 Hillgard Street; and that he had, along with Holt, planned the execution of the robbery, including the use of a getaway car. McDougal was subsequently indicted and pled guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and one count of using, carrying, and brandishing a firearm during and in relation of a crime of violence in violation of 18 U.S.C. § 924c. As part of each count, McDougal also pled guilty to aiding and abetting the same offenses in violation of 18 U.S.C. § 2.

On August 7, 2008, McDougal was sentenced to 36 months of incarceration on the bank robbery count and a consecutive 84 months of incarceration on the weapons count, to be followed by five years of supervised release; judgment against him was entered the following day. The district court reserved the question of whether McDougal should be made to pay restitution to the Trotwood Police Department for the damage done to their police cruisers, because McDougal had objected to the Presentence Investigation Report's recommendation that he be held accountable for the damage caused to those vehicles by Holt's attempts to elude capture. At the August 7 sentencing hearing, the district court made plain its intention to hold a hearing to determine the facts necessary to decide the restitution issue, and to incorporate any such restitution into McDougal's sentence by way of an amended entry. McDougal filed a notice of appeal from that decision on August 11, 2008.

The restitution hearing contemplated by the district judge was held on August 20, 2008. On December 19, 2008, he issued a decision and entry imposing on McDougal joint and several obligation (with Holt) to make restitution to the Trotwood Police Department in the sum of $13,565.02. On December 22, 2008, McDougal filed an amended notice of appeal from the August 8, 2008 judgment and from the district court's restitution decision of December 19, 2008. The court's amendment to the original judgment entry was filed on December 24, 2008. The two appeals have been consolidated for review.

## II

Restitution to victims of certain crimes is made mandatory by the Mandatory Victims Restitution Act ("MVRA"):

> (a)(1) Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order . . . that the defendant make restitution to the victim of the offense . . . .
> (2) For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. . . .

18 U.S.C. § 3663A. The offenses "described in subsection (c)" include crimes of violence. 18 U.S.C. § 3663A(c)(1)(A)(i). Violations of 18 U.S.C. § 2113(a) and (d), such as those to which McDougal pled guilty, are crimes of violence. *See United States v. Davis*, 306 F.3d 398, 408–09 (6th Cir. 2002).

In seeking to overturn the district court's restitution award, McDougal advances both jurisdictional and substantive arguments.

-4-

A

As a threshold matter, McDougal argues that the district court lacked jurisdiction to impose an order of restitution on December 19, 2008. McDougal theorizes that, because he had already filed a notice of appeal from the court's judgment of August 8, 2008, the district court no longer had jurisdiction to enter a restitution order because "an effective notice of appeal divests the district court of jurisdiction over matters forming the basis for appeal[.]" *United States v. Lubowa*, 102 F. App'x 453, 455 (6th Cir. 2004). McDougal is wrong.

Because McDougal did not raise this issue at the district court, we review the district court's assumption of jurisdiction for plain error. "Where, as here, a criminal defendant has failed to object below, he or she must demonstrate that the error was plain as defined by [Rule 52 of the Federal Rules of Criminal Procedure] before we may exercise our discretion to correct the error." *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998) (footnote omitted). To establish plain error, a defendant must show that (1) an error occurred in the district court; (2) the error was obvious or clear; (3) the error affected the defendant's substantial rights; and (4) this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001). Only in exceptional circumstances in which the error is so plain that the trial judge and prosecutor were derelict in countenancing it will this court reverse a conviction under the plain error standard. *United States v. Carroll*, 26 F.3d 1380, 1383 (6th Cir. 1994).

The jurisdictional argument advanced by McDougal founders on the first element of the plain error test. In its judgment of August 8, 2008, the district court, in addition to imposing specific terms of imprisonment and supervised release, deferred the determination of restitution and indicated that

"[a]n amended Judgment in a Criminal Case . . . will be entered after such determination." Thus restitution did not form any part of the sentencing order as it existed at the time of the original appeal, and could not have been a "matter[] forming the basis for appeal."

*Lubowa* is not to the contrary, nor is *Griffin v. Tate*, 25 F.3d 1048, 1994 WL 198146 (6th Cir. May 18, 1994) (table), on which the appellant relies for the proposition that "[o]nce a proper notice of appeal has been filed, the district court is not free to alter or enlarge the scope of its judgment." In the former case, we held that a district court retains jurisdiction to enforce a judgment under appeal as long as the judgment has not been stayed or superseded. *Lubowa*, 102 F. App'x at 455. In *Griffin*, we observed that notice of appeal *generally* divests the district court of jurisdiction over the subject matter of the appeal, and held that a district court had lacked jurisdiction to consider a "cryptic motion for relief" filed by a prisoner during the pendency of his direct appeal from the dismissal of an earlier habeas petition. Nothing in either case prevents a district court from deferring the calculation of a restitution order so that it may gather information as to the factual basis for such a calculation.

This is not, after all, a situation in which the district court has arbitrarily decided to impose additional penalties on a defendant, making its judgment a moving target. Indeed, the MVRA permits no discretion on the part of the district court once liability has been found: it *"shall* order . . . that the defendant make restitution," and, in the case of crimes of violence that result in damage to property, the process for calculating the amount of the restitution is fixed by the statute. Once McDougal was convicted of a crime of violence, his liability for restitution to the victims of the offense of his conviction was certain; the only issue remaining was the specific amount of monetary

-6-

damages for which he was responsible. Thus the district court did not "alter or enlarge" the scope of its judgment.

Moreover, the language of the statute itself makes plain that a final determination of restitution may be delayed until after sentencing in some cases. In particular, it provides that "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing . . . the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. 3664(d)(5). This language clearly indicates that a restitution determination can occur after sentencing. We have further held that Section 3664 "grants a district court discretion to choose the procedures that will best aid the court in assessing the amount of loss" once liability has been established under § 3663A. *United States v. Vandeberg*, 201 F.2d 805, 813 (6th Cir. 2000).

Though McDougal's jurisdictional argument is without merit, we do note that the district court did err in failing to fix the final restitution amount owed by the defendant within the 90-day window provided by the MVRA. *See Vandeberg*, 201 F.2d at 813 ("the court is statutorily obligated to resolve the restitution issue within 90 days of the sentencing hearing"). The government concedes that the district court exceeded this limit. While McDougal himself does not raise this argument, "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Ky., Inc. v. Creation Ministries Intern., Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009).

Nevertheless, we hold that the district court's failure to fix the final restitution amount within the statutorily-mandated timeframe was not plain error, because the error did not affect McDougal's substantial rights. "Generally, an error does not affect substantial rights unless it is prejudicial—in other words, the error 'must have affected the outcome of the district court proceedings.'" *United*

*States v. Davis*, 514 F.3d 596, 615 (6th Cir. 2008) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)) (citation and internal quotation marks omitted). As explained above, the amount of restitution owed by McDougal was fixed by statute in this case; moreover, the evidentiary basis for that amount was gathered by the court on August 20, 2008, well within 90 days of sentencing, and there is no indication that the amount eventually ordered by the district court was affected by any fact introduced after the 90 days had elapsed. Because the district court would have ordered the same amount of restitution if it had not erred in delaying beyond the date fixed by statute, the error did not affect McDougal's substantial rights and was therefore not "plain error."

B

We turn now to McDougal's substantive arguments regarding the district court's restitution order. We review the propriety of ordering restitution de novo. *United States v. Guardino*, 972 F.2d 682, 686 (6th Cir. 1992).

McDougal, the government, and the district court all seem to have been in agreement that whether or not McDougal was responsible for the actions of Holt following the pair's separation was governed by Section 1B1.3(a)(1)(B) of the United States Sentencing Guidelines, which imposes culpability on a defendant "in the case of a jointly undertaken criminal activity . . . [for] all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." Thus, McDougal's primary arguments on appeal go to the questions of whether Holt's actions were "in furtherance of" the bank robbery and/or "reasonably foreseeable."

After careful review, however, we find ourselves in disagreement with the premise of the district court's decision and the parties' briefing on this issue. The language quoted is taken from a portion of Section 1B1.3 that applies by its terms to Chapters Two (Offense Conduct) and Three

(Adjustments) of the Guidelines—in other words, the portions of the guidelines that bear on calculating a base offense level and adjustments thereto caused by relevant circumstances of the offense. Ultimately, the quoted language is intended to apply when the court calculates a guideline range in order to determine an appropriate length of imprisonment, probation, and/or supervised release. Restitution, on the other hand, is governed by Section 5E1.1 of the guidelines, which, in relevant part, merely indicates that the court shall "enter a restitution order for the full amount of the victim's loss, if such order is authorized under . . . § 3663A . . . ." (5E1.1(a)(1).) The Guidelines thus provide no assistance in determining whether restitution is appropriate in this case, and we must look to other sources for interpretation of § 3663A.

In *Hughey v. United States*, 495 U.S. 411 (1990), the Supreme Court interpreted the predecessor to the MVRA, the Victim and Witness Protection Act, as requiring that a restitution order must be limited to the losses caused by the offense of conviction. In response, Congress amended the Act to expand the definition of "victim" to include a person harmed "as a result of the commission of an offense . . . including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." *United States v. Elson*, 577 F.3d 713, 722 (6th Cir. 2009) (quoting 18 U.S.C. § 3663(a)(2)). This same definition was used when Congress enacted the MVRA; therefore, under the MVRA, "'if someone is convicted of a conspiracy, the court can order restitution for damage resulting from any conduct that was part of the conspiracy and not just from specific conduct that met the overt act requirement of the conspiracy conviction.'" *Id.* at 723 (quoting *United States v. Reed*, 80 F.3d 1419, 1423 (9th Cir. 1996)). However, *Hughey* continues to "require[] the court to exclude injuries caused by offenses that are not part of the scheme

of which [the defendant] has been convicted." *Ibid.* (quoting *United States v. George*, 403 F.3d 470, 474 (7th Cir. 2005)) (alterations in *Elson*).

Despite record evidence that McDougal and Holt planned their bank robbery in advance, McDougal was neither charged with nor convicted of conspiracy in this case, nor do the offenses of bank robbery or brandishing a firearm "involve as an element a scheme, conspiracy, or pattern of criminal activity." Hence he is not liable for restitution under *Elson*'s holding with respect to conspiracies, even assuming that Holt's conduct after they split up would otherwise qualify as "conduct that was part of the conspiracy."

McDougal *is* liable for restitution, however, because McDougal was also found to have aided and abetted Holt in robbing the bank under 18 U.S.C. § 2, which provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." We therefore need not decide whether the injuries at issue were caused by the "offense of conviction" (bank robbery) on McDougal's part. It is sufficient if they were, in any event, caused by the "offense of conviction" of bank robbery on Holt's part, for which McDougal is "punishable as a principal."

The record below clearly establishes that the damages to the Trotwood Police Department vehicles that are the subject of the district court's restitution order were incurred while Holt was engaged in the commission of the bank robbery. We have held that "[a]s the crime of bank robbery cannot be completed without some form of flight or attempted flight, the crime is more naturally understood to include the act of fleeing and the immediate consequences of such flight." *United States v. Muhammad*, 948 F.2d 1449, 1456 (6th Cir. 1991); *see United States v. Sharp*, 106 F.3d 402, 1997 WL 21195, at *1 (6th Cir. Jan. 17, 1997) (table) (defendant liable for police officer's injuries

suffered in a wreck while chasing defendant after a robbery because wreck was "immediate consequence" of flight). The record evidence in this case establishes that Holt and McDougal were both in the act of flight at least until McDougal left the vehicle, and that Holt—who immediately thereafter encountered the police—continued to flee throughout the period that the damages were incurred. The fact that no more than ten minutes elapsed between the robbery and Holt's capture, the fact that Holt was observed driving his vehicle at a high rate of speed until his capture, and the fact that he had not yet even left the neighborhood in which the getaway vehicle was parked are all strong indications that the act of fleeing was ongoing, and that the damage to the police cars was therefore an immediate consequence of such flight.

Regardless of whether McDougal's crime continued past the point at which the two bank robbers parted, Holt's certainly did. Because McDougal "is punishable as a principal" for Holt's crimes, he may be ordered to pay restitution in this case.

There is similarly no merit to McDougal's final argument, that restitution was inappropriate in this case because the police were not "victims" of his crime within the meaning of the MVRA. McDougal's argument relies on his contention that the police officers "were not directly involved in either the offense, or the immediate pursuit." For the reasons explained above, the offense for which McDougal was responsible under the MVRA was, in fact, ongoing at the time of the damage to the police cars, and the damage was directly caused thereby.

**III**

McDougal also challenges the reasonableness of the district court's sentence of 120 months of imprisonment. The sum of his argument on appeal reads as follows:

In the present case, the Appellant's family medical situation, his role vis-a-vis his co-defendant, his quick capture and detention, the lack of harm to any person in the bank, and that the basis for his offense was not greed, but financial need, all were factors warranting a lesser sentence. On this basis, a remand for resentencing should be made.

Our inquiry into the reasonableness of a district court's sentence has both procedural and substantive components. *United States v. Caver*, 470 F.3d 220, 248 (6th Cir. 2007). Accordingly, "we must 'consider not only the length of the sentence but also the factors evaluated and the procedures employed by the district court in reaching its sentencing determination.'" *United States v. Moon*, 513 F.3d 527, 539 (6th Cir. 2008) (quoting *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)). Although McDougal does not specify whether he is challenging the procedural or the substantive reasonableness of his sentence, we find no error in either.

A

We first note that McDougal was not given adequate opportunity to object to the reasonableness of his sentence before the district court. "[A]fter pronouncing the defendant's sentence but before adjourning the sentencing hearing," the district court must ask whether the parties have any objections to the sentence; if the parties are not provided this opportunity, "they will not have forfeited their objections." *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004). In this case, at the conclusion of the hearing, the court asked, "Mr. Greger, anything further for the record?" This general question does not satisfy the *Bostic* requirement. *See United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007) (holding that *Bostic* was not satisfied when the court asked counsel "[d]o you have anything further for the record?"). Accordingly, we review the procedural reasonableness of McDougal's sentence not for plain error, but instead "'under a deferential abuse-of-discretion standard' for reasonableness." *United States v. Lalonde*, 509 F.3d 750, 769 (6th Cir.

2007) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)).  Under this standard, the court conducts "a robust review of the factors evaluated and the procedures employed by the district court in reaching its sentencing determination."  *United States v. Bolds*, 511 F.3d 568, 578–79 (6th Cir. 2007) (internal quotation marks and citation omitted).

Nevertheless, even under the more robust abuse-of-discretion standard, we find no indication that the district court's sentence was procedurally unreasonable.  A sentence is procedurally unreasonable if the sentencing judge "fail[s] to calculate (or improperly calculat[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence . . . ."  *Gall*, 552 U.S. at 51.  McDougal's sentencing transcript reflects that the district court properly complied with each of these requirements, and indeed his argument does not seem to claim otherwise.  McDougal claims only that the sentencing court failed to accord more significance to individual facts before it, a practice well within its broad discretion.

B

Nor did the district court impose a substantively unreasonable sentence, a claim we also review for abuse of discretion.  *See United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).  "A sentence may be substantively unreasonable where the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any particular factor."  *United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009) (citation, internal quotation marks, and alterations omitted).

McDougal's 120-month sentence comprised both an 84-month term imposed for the firearms charge and a consecutive 36-month term imposed for the bank robbery charge.  The former was the

-13-

mandatory minimum sentence for that charge, and McDougal challenges neither the term of imprisonment entered pursuant to it nor the fact that the two sentences were to be served consecutively. As a consequence, his argument goes solely to the substantive reasonableness of the 36-month term imposed for the bank robbery charge, a term that was well below the range of 51 to 63 months recommended by the Sentencing Guidelines. Because we accord a presumption of substantive reasonableness to a within-guidelines sentence, *Rita v. United States*, 551 U.S. 338 (2007), "simple logic compels the conclusion that . . . [the] defendant's task of persuading us that [a] more lenient sentence . . . is unreasonably long is even more demanding." *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008).

Indeed, McDougal's own attorney, Lawrence Greger, told the court at the sentencing hearing that he believed a 36-month sentence would not be unreasonable. Before passing sentence, the court gave Greger an opportunity to say anything he wanted "on behalf of [his] client as it may apply to the merits of the sentencing." Greger responded by indicating that he and his client understood that 84 months was the bare minimum McDougal could receive, but that McDougal's background weighed against a relatively lengthy additional sentence. Instead, Greger argued:

> Your Honor, for what it's worth and I think it should be worth something, a sentence in the range of 24 months to 36 months in addition to the 7 years, so a sentence of 9 or 10 years is clearly going to be sufficient but not greater than necessary. . . . He made a choice under the influence of controlled substances to do what no one can credibly argue is not a very serious intimidating and arguably deadly situation. No question about that.

With this in mind, we find no basis whatsoever for a determination that the district court abused its discretion in imposing a below-guidelines sentence that McDougal himself, through counsel, agreed was appropriate to effectuate the sentencing court's duty to "impose a sentence

-14-

sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a)(2)." *United States v. McConer*, 530 F.3d 484, 501 (6th Cir. 2006) (internal quotation marks omitted). McDonald's argument, generously construed, appears to be that the facts he mentions ought to have been given greater weight as going to the "nature and circumstances of the offense and the history and characteristics of the defendant," one of the factors the district court is required to consider when fashioning a sentence. 18 U.S.C. § 3553(a)(1). Aside from McDougal's conclusory allegation, however, he presents no evidence that the district judge was unaware of the facts he mentions, or that he failed to consider them. In fact, McDougal's counsel admitted during the sentencing hearing that "[t]his Court is well aware of the physical challenges that [McDougal's] father faces. The father's blindness." The judge explicitly considered McDougal's culpability when compared to Holt's, and concluded that "qualitatively while both Mr. Holt and Mr. McDougal are equally culpable looking at it factually Mr. McDougal is a tad, and a small tad, less so."[1] Similarly, the judge considered the fact that no one inside the bank was harmed, but indicated that he believed that to be "only be the grace of a higher power"; in other words, he considered the deliberate behavior of the defendant, which created potential for such an occurrence, to be more important than the providential fact that no one in the bank panicked, which could have led to a shooting. Further, the judge was also clearly aware of the fact that McDougal "participated in order to get money to pay off his debts."

We conclude that the sentencing judge properly exercised his discretion in considering all of these facts, as well as all other relevant information presented to him pertaining to the nature and circumstances and the history and characteristics of the defendant, when he imposed a sentence of

---

[1]Despite being "a small tad" less culpable, McDougal received the same sentence as Holt; however, as the district judge noted, McDougal also "ha[d] a slightly worse criminal record."

36 months of imprisonment on McDougal for the bank robbery charge. McDougal's arguments to the contrary are merely disagreements with the effect those facts had on the judge's determination as to what constituted an appropriate sentence. We have no license to undo that determination, given that "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case." *Gall*, 552 U.S. at 51.

Having also reviewed the other factors under § 3553, along with the other considerations that make up procedural and substantive reasonableness in sentencing—none of which McDougal has raised on his own—we conclude that there is no other basis for finding that the district court abused its discretion in imposing a 36-month sentence for armed bank robbery in addition to the mandatory 84-month sentence for the weapons charge.

## IV

For the above reasons, the judgment of the district court is **AFFIRMED**.