RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0239p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

LEONEL RUIZ-LOPEZ,

*Defendant-Appellant*.

> Nos. 21-6094/6229

Appeal from the United States District Court for the Western District of Tennessee at Memphis.
No. 2:21-cr-20012—Jon Phipps McCalla, District Judge.

Decided and Filed:  November 15, 2022

Before:  SILER, McKEAGUE, and LARSEN, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:**  Robert L. Thomas, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  Scott P. Smith, Kevin G. Ritz, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

───────────────

**OPINION**

───────────────

LARSEN, Circuit Judge.  Leonel Ruiz-Lopez brought his new pistol into a gas station in Memphis, Tennessee.  While showing the gun to his acquaintances who worked there, he pointed the gun at one of them.  When he lowered the gun to return it to his pocket, he hit the trigger and the gun discharged.  The bullet ricocheted off the floor and struck an employee in the leg.  Ruiz-Lopez pleaded guilty to being an undocumented alien in possession of a firearm.  The district court sentenced him to twenty-one months' imprisonment and ordered him to pay restitution to

cover the employee's medical bills.  Ruiz-Lopez appeals his sentence and the order of restitution. We AFFIRM.

## I.

Leonel Ruiz-Lopez was a frequent customer at an Exxon gas station in Memphis and was friendly with the station employees, including Abdel Hamid.[1]  One day in February, Ruiz-Lopez made his regular stop at the gas station, carrying his new pistol in his pocket.  As he entered, he made a playful grab for Hamid's hip-holstered firearm.  According to Hamid's testimony, another employee then asked Ruiz-Lopez whether he had a new gun.  Ruiz-Lopez responded by pulling his pistol out of his pocket and pointing it at Hamid's face.  As Ruiz-Lopez lowered the gun to put it back in his pocket, he hit the trigger, discharging the weapon.  The bullet ricocheted off the floor and struck Hamid's leg.  A surveillance camera captured this encounter, and although Ruiz-Lopez's body obscures his movements with the gun, the district court found Hamid's testimony about the events credible.  Hamid was taken to the hospital and treated for his injury.

A grand jury indicted Ruiz-Lopez for possessing a firearm as an undocumented alien in violation of 18 U.S.C. § 922(g)(5), and Ruiz-Lopez pleaded guilty.  At sentencing, the parties disagreed over a proposed four-level sentencing enhancement for "possess[ing] a[] firearm . . . in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B).  The government asserted that Ruiz-Lopez had committed reckless endangerment with a firearm, a felony under Tennessee law.  Ruiz-Lopez contended that his behavior may have been negligent but wasn't reckless.  He also argued that the video and Hamid's testimony did not align, suggesting he never pointed the gun at Hamid's face.  The court denied Ruiz-Lopez's objection, finding that he had recklessly endangered others with a firearm when he wielded a loaded gun in gas station.

The parties also disputed whether Ruiz-Lopez should be required to pay restitution to Hamid.  Ruiz-Lopez argued that Hamid's injuries were not a direct or proximate result of his

---

[1]The record occasionally refers to Hamid as "Abdelhamid Abdelhamid."  We use the name and spelling reflected in the sentencing hearing transcript.

illegal possession of a firearm.  But the district court disagreed and ordered Ruiz-Lopez to pay Hamid $4,689.64 in restitution.

Ruiz-Lopez timely appeals.

## II.

On appeal, Ruiz-Lopez challenges the district court's application of the guidelines enhancement under § 2K2.1(b)(6)(B) and its imposition of restitution.

*The Sentencing Enhancement.*   Whether the district court properly calculated Ruiz-Lopez's guidelines range is a question of procedural reasonableness. *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019).  We review such claims for an abuse of discretion, asking whether the district court relied on clearly erroneous factual findings or applied incorrect legal standards. *United States v. Fowler*, 819 F.3d 298, 303 (6th Cir. 2016).  Factual findings based on credibility demand great deference to the district court because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985).

Section 2K2.1(b)(6)(B) authorizes a four-level enhancement if a defendant "used or possessed any firearm or ammunition in connection with another felony offense."  Any "federal, state, or local offense" punishable by confinement exceeding one year counts, "regardless of whether a criminal charge was brought, or a conviction obtained."  U.S.S.G. § 2K2.1 cmt. 14(C).  The district court applied the enhancement, concluding that Ruiz-Lopez committed reckless endangerment with a deadly weapon, a felony under Tennessee law.  Ruiz-Lopez lodges two objections to the enhancement, one legal and one factual.

Under Tennessee law, a person commits reckless endangerment with a deadly weapon when he "recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury."  Tenn. Code Ann. § 39-13-103(a), (b)(2). Recklessness means "consciously disregard[ing] a substantial and unjustifiable risk," and must amount to "a gross deviation from the standard of care that an ordinary person would exercise

under all the circumstances as viewed from the accused person's standpoint." *Id.* § 39-11-106(a)(34).

Ruiz-Lopez argues that merely firing a gun does not constitute reckless endangerment. But the cases he offers dealt with firing a gun when no one was around. *See United State v. Mukes*, 980 F.3d 526, 534 (6th Cir. 2020); *State v. Fox*, 947 S.W.2d 865, 866 (Tenn. Crim. App. 1996). Tennessee courts have recognized repeatedly that pointing a loaded gun at another person constitutes reckless endangerment. *State v. Bengtson*, No. E1999-01190-CCA-R3-CD, 2000 WL 1456926, at *3–4 (Tenn. Crim. App. Oct. 2, 2000); *State v. Spraggins*, No. W2009-01073-CCA-R3-CD, 2010 WL 1839303, at *6 (Tenn. Crim. App. May 7, 2010); *see also State v. Patterson*, No. W2011-02101-CCA-R3-CD, 2012 WL 6206287, at *4 (Tenn. Crim. App. Dec. 11, 2012) (reversing reckless endangerment conviction when evidence established defendant pointed an *unloaded* gun at the victim). Ruiz-Lopez's legal argument fails.

Ruiz-Lopez next challenges the district court's factual finding that he pointed the loaded gun at Hamid's head before it went off. That finding was not clearly erroneous. At the sentencing hearing, Hamid testified that Ruiz-Lopez removed his gun from his pocket, pointed it at Hamid, and then "hit the trigger" while attempting to return the gun to his pocket. The bullet then lodged in Hamid's leg. Testimony by Homeland Security Special Agent David Gilliam supports Hamid's recollection of the events. Specifically, Agent Gilliam's testimony identified the conditions that were necessary for the gun to fire in the manner that it did: the gun must have been loaded, the safety must have been off, and the trigger must have been pulled. The district court found Hamid and Gilliam's testimony credible, and we must give significant deference to that finding. *United States v. Wooten*, 689 F.3d 570, 573 n.1 (6th Cir. 2012). When a witness's testimony is coherent, facially plausible, and not contradicted by extrinsic evidence, a judge's decision to credit that witness "can virtually never be clear error." *Anderson*, 470 U.S. at 575.

Ruiz-Lopez objects that the video evidence does not support the conclusion that he pointed the gun at Hamid's face. We see no conflict between Hamid's testimony and the video. To the contrary, Hamid's testimony aligns with and supplements the events that the video captured. The video shows Ruiz-Lopez entering the gas station and making a playful grab for Hamid's holstered gun. It then shows some movement on his right side, which is obscured by

his body. Hamid's testimony, which the district court found credible, filled in the gaps the video failed to capture. The district court did not clearly err when it found that Ruiz-Lopez pointed a loaded firearm at Hamid's face prior to its discharge, and, accordingly, committed no error by applying the § 2K2.1(b)(6)(B) enhancement.

*Restitution*. We turn to Ruiz-Lopez's challenge to the restitution order. "We review the propriety of ordering restitution de novo and the amount of restitution ordered for abuse of discretion." *United States v. Sizemore*, 850 F.3d 821, 824 (6th Cir. 2017) (quoting *United States v. Bearden*, 274 F.3d 1031, 1040 (6th Cir. 2001)). Courts may, and sometimes must, award restitution to a victim when sentencing a defendant for a federal crime. 18 U.S.C. § 3663(a)(1)(A) (discretionary restitution statute); 18 U.S.C. § 3663A(a)(1) (mandatory restitution statute). A court is not required to state which statute it is ordering restitution under, and here the district court did not. *United States v. Owens*, 426 F.3d 800, 809 (6th Cir. 2005). The parties agree, however, that the discretionary Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, governs this case.

The VWPA permits courts to order restitution to any victim of an offense codified in Title 18 of the U.S. Code. 18 U.S.C. § 3663(a)(1)(A). The statute defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense."[2] *Id.* § 3663(a)(2). The district court rightly concluded that Hamid was entitled to restitution under this statute.[3]

"The requirement that the victim be 'directly and proximately harmed' encompasses the traditional 'but for' and proximate cause analyses." *In re McNulty*, 597 F.3d 344, 350 (6th Cir. 2010) (quoting *In re Rendon Galvis*, 564 F.3d 170, 175 (2d Cir. 2009)). Both conditions are met

---

[2]The Mandatory Victims Restitution Act (MVRA) defines "victim" identically. *Compare* 18 U.S.C. § 3663(a)(2) (VWPA) *with* 18 U.S.C. § 3663A(a)(2) (MVRA). The Crime Victims' Rights Act (CVRA) also uses the same definition of victim. *See* 18 U.S.C. § 3771(e)(2)(A). Because of the identical statutory definitions, we analyze cases interpreting the relevant language from the VWPA, MVRA, and CVRA interchangeably.

[3]To the extent that Ruiz-Lopez challenges the *amount* of restitution, we find the district court did not abuse its discretion in ordering $4,689.64 in restitution. The information underlying the amount of restitution, Hamid's testimony and copies of Hamid's medical bills, provided "sufficient indicia of reliability" to support the award's "probable accuracy." *United States v. Sawyer,* 825 F.3d 287, 295 (6th Cir. 2016) (quoting *United States v. Jackson–Randolph*, 282 F.3d 369, 386 (6th Cir. 2002)).

here. But for Ruiz-Lopez's unlawful possession, the firearm would not have been in the gas station that day, and it would not have discharged, causing injury to Hamid's leg. Ruiz-Lopez's conduct in possessing the weapon was also the direct and proximate cause of Hamid's injury. The link between Ruiz-Lopez's actions and Hamid's injury cannot be described as "'too remote,' 'purely contingent' or 'indirect.'" *United States v. Evers*, 669 F.3d 645, 659 (6th Cir. 2012) (quoting *Hemi Group, LLC, v. City of New York*, 559 U.S. 1, 9 (2010) (plurality opinion)). And the risk of injury was also entirely foreseeable. The district court determined that Ruiz-Lopez possessed the gun in a reckless fashion: having "taken steps to make it capable of discharging a bullet," including removing the safety, Ruiz-Lopez "pointed the firearm at the face or head of the victim;" then "as he lower[ed] it, he presse[d] on the trigger and discharge[d] the firearm," injuring Hamid. Not only was the risk of injury foreseeable, the district court concluded that Ruiz-Lopez had "consciously disregard[ed] a substantial and unjustifiable risk that precisely what happened [would] occur." The restitution order was proper because Hamid was a victim who was "directly and proximately harmed as a result of [Ruiz-Lopez's] commission" of the offense. 18 U.S.C. § 3663(a)(2).

Ruiz-Lopez protests this conclusion. He points to *Hughey v. United States*, which held "that the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." 495 U.S. 411, 420 (1990). As Ruiz-Lopez sees it, the restitution order here exceeds that boundary because he was convicted of mere unlawful *possession* of a firearm, but it was his reckless *handling* and resulting *discharge* of the gun that directly and proximately caused Hamid's injury. Because the manner of possession is not an element of the alien-in-possession offense, he argues that Hamid was not a victim of his crime. We disagree. The plain language of the statute authorizes restitution to persons "directly and proximately harmed as a result of *the commission* of an offense," 18 U.S.C. § 3663(a)(2) (emphasis added). And, although the prosecutor was not required to prove recklessness to obtain a conviction, Ruiz-Lopez's particular act of possession— his "commission of" the possession offense— directly and proximately caused Hamid's harm. *See United States v. Chalupnik*, 514 F.3d 748, 753 (8th Cir. 2008) ("the word 'commission' reflects an intent to include the defendant's total conduct in committing the offense"). We are not the first court to conclude that the amended restitution statutes permit district courts to award restitution based on facts not strictly required to secure a

conviction. *See United States v. Washington*, 434 F.3d 1265, 1268 (11th Cir. 2006) ("Although flight is not an element of bank robbery," restitution for the harm caused by fleeing bank robber was proper because it "directly and proximately result[ed] from the robbery."); *accord United States v. Reichow*, 416 F.3d 802, 804–05 (8th Cir. 2005); *United States v. Donaby*, 349 F.3d 1046, 1053 (7th Cir. 2003); *United States v. McDougal*, 368 F. App'x 648, 654 (6th Cir. 2010); *see also United States v. Sawyer*, 825 F.3d 287, 297 (6th Cir. 2016) (noting that the *Apprendi* rule does not apply to restitution awards).

Ruiz-Lopez overreads *Hughey* by suggesting otherwise. In *Hughey*, the defendant pleaded guilty to a single count of unauthorized use of a credit card issued to a man named Hershey Godfrey. 495 U.S. at 413–14. But the district court awarded restitution based not only on Hughey's fraudulent use of Godfrey's card, but of his "alleged theft and use of 21 cards from various MBank cardholders." *Id.* at 414. The Supreme Court reversed, concluding that "Congress intended restitution to be tied to the loss caused by the offense of conviction," not to "conduct unrelated to the offense of conviction," that might yet be "attributable to the defendant." *Id.* at 418. In other words, "*Hughey* required a causal link between the offense of conviction and the harm for which restitution is ordered." *Washington*, 434 F.3d at 1269. That link is present here. Ruiz-Lopez's particular act of possession "directly and proximately" caused Hamid's harm.

Ruiz-Lopez points us to decisions from other circuits that have read *Hughey* more narrowly. In *United States v. Reed*, for example, the Ninth Circuit restated *Hughey*'s holding this way: "restitution may only be imposed for conduct that *constitutes an element* of the offense." 80 F.3d 1419, 1423 (9th Cir. 1996) (emphasis added). Some other courts have followed suit. *See United States v. Penn*, 969 F.3d 450, 458 (5th Cir. 2020) (denying restitution because "[t]he specific conduct underlying the elements of the felon-in-possession offense does not include use of a firearm or flight from police"); *United States v. Davis*, 714 F.3d 809, 814 (4th Cir. 2013) (denying restitution to homeowner from whom defendant burgled a gun because the offense of conviction—possession of a stolen firearm—does not require proof of theft, "only knowledge of a theft"). We disagree with this "elements-only" approach. No "elements-only" language appears in *Hughey*. And, importantly, no such language appears in the VWPA, which

was amended *after* the *Hughey* decision to authorize restitution for any "victim" "directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663(a)(2). *See Donaby,* 349 F.3d at 1054 ("The text of the VWPA, the MVRA, and the *Hughey* opinion . . . do not limit restitution to the elements of the offense.").

Next, Ruiz-Lopez points us toward our own precedent, arguing that *United States v. Clark*, 957 F.2d 248 (6th Cir. 1992) ties our hands to the elements-only approach. But *Clark*, like *Hughey*, interpreted an earlier version of the statute that didn't define "victim." *See* Pub. L. 101-647, § 2509, 104 Stat. 4789, 18 U.S.C. § 3663 (1990). And, in any event, nothing in *Clark* is inconsistent with our holding today. Clark was convicted of stealing two vehicles from the FBI during a sting operation. *Clark*, 957 F.2d at 253. The district court ordered restitution not only for the two FBI vehicles but also for vehicles Clark had stolen from others during the sting. *Id.* at 252. We reversed. Because *Hughey* limits restitution to "the loss caused by the conduct underlying the offense of conviction," the defendant could be made to pay restitution only for the charged thefts of the two FBI vehicles, not for stealing other cars. *Id.* at 253. In other words, *Clark*, like *Hughey*, stands for the proposition that restitution is limited to losses flowing from the offense of conviction. The district court's restitution award in this case respects both that limit and the text of the amended VWPA. Ruiz-Lopez was ordered to pay restitution to Hamid, who was "directly and proximately harmed as a result of the commission of" Ruiz-Lopez's offense. 18 U.S.C. § 3663(a)(2).

\* \* \*

We AFFIRM.