NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0203n.06

Case No. 22-5177

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| | ) | **FILED** |
| UNITED STATES OF AMERICA, | ) | May 07, 2024 |
| Plaintiff-Appellee, | ) | KELLY L. STEPHENS, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| NICHOLAS NASSIF HAYEK, | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: MOORE, READLER, and MURPHY, Circuit Judges.

READLER, J., delivered the opinion of the court in which MURPHY, J., concurred in full and MOORE, J., concurred in the judgment.

**CHAD A. READLER, Circuit Judge.** Nicholas Hayek struck up an online conversation with a stranger. The stranger announced that she was a ten-year-old girl. Hayek proceeded to discuss sexually explicit topics and exchange nude photos with the girl. Those acts resulted in Hayek's indictment and eventual conviction for child enticement and child pornography offenses. Finding no prejudicial error in the district court proceedings, we affirm.

I.

Nicholas Hayek conversed online with a ten-year-old girl. The two discussed sexually explicit topics. At Hayek's request, each sent nude photos to the other. When the girl's mother learned of these events, she reported the matter to local law enforcement.

Officers obtained a search warrant for Hayek's home. While executing the warrant, two officers read Hayek his *Miranda* rights and then asked if he wanted to speak to them. Hayek agreed and signed a rights advisement form. During an audio-recorded interview, Hayek admitted to exchanging sexually explicit pictures with the victim, a minor. He was arrested that day.

A grand jury indicted Hayek and charged him with five counts: (1) enticing a minor to engage in sexual activity under 18 U.S.C. § 2422(b); (2) enticing a minor to engage in sexual activity for the purpose of producing a visual depiction of the conduct under 18 U.S.C. § 2251(a); (3) transferring obscene material to a minor under 18 U.S.C. § 1470; (4) receipt of child pornography under 18 U.S.C. § 2252A(a)(2)(A); and (5) possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B).

Hayek filed a motion for a bill of particulars as to Counts One and Two. Through the motion, he requested the "specific factual allegations" underlying the charged "sexual activity" (Count One) and "sexually explicit conduct" (Count Two). The district court denied the motion, noting the indictment was "straightforward and sufficiently detailed to provide [Hayek] adequate notice of the crimes with which he [was] charged." Likewise, the court added, Hayek had received the relevant conversations, images, and associated timeframe in discovery.

Hayek also filed a motion to suppress his statements to the officers, contending that those statements were the product of "duress and coercion." An evidentiary hearing on the motion featured testimony by the interrogating officers. Hayek, the officers explained, asked what rights he had, stated it was "better to be open," and signed and initialed the advisement form. According to the officers, Hayek was offered a break during the interview. Hayek did not slur his words, and the officers neither smelled alcohol on Hayek nor noticed any impairment. At no point did the officers discuss Hayek's family's immigration status.

2

Hayek's testimony painted a different story. He explained that the night before the search he consumed a considerable amount of alcohol and NyQuil, which left him "barely [able to] process." He claimed that he repeatedly requested an attorney. Officers, he said, pointed their guns and rifles at him. Hayek said that this display of force, coupled with an officer stating that he would look through Hayek's family's "papers and devices" if Hayek did not speak with them, coerced him to cooperate.

The district court found the officers credible and Hayek unreliable. The court likewise found Hayek competent to consent and his consent knowing and intelligent. For these and related reasons, the court denied Hayek's motion.

Before trial, the government provided notice of its intent to introduce a video recording of the victim's forensic interview. Hayek countered that the recording was inadmissible under Federal Rule of Evidence 403 because it would "inflame the passions of the jury and unfairly prejudice [him]." The district court sided with the government and denied Hayek's motion to exclude.

At trial, the government called an officer who investigated Hayek. The officer testified that she recovered chat logs and photos from the victim's phone, many of which contained sexual material. From there, the officer explained that she assumed the persona of the victim and began chatting with Hayek. The officer reiterated that "she" was ten years old, yet Hayek continued to discuss sexual matters and send pictures of his genitals.

An officer who had interviewed Hayek testified about an audio recording of Hayek's interview. In the interview, Hayek admitted to chatting (by text and video) with someone who was a minor. He claimed he stopped talking to her as soon as he found out she was ten years old, but he recanted this statement when the agents confronted him with conflicting evidence.

3

Finally, the government called the victim. She recounted how she met Hayek online. She told him she was ten, and they began chatting, including discussing sexual topics. Hayek repeatedly asked her for nude photos; she sometimes complied. Hayek also sent her unsolicited nude photos of himself. When the two videochatted, Hayek asked to see the victim's genitals.

Hayek also took the stand. He testified that he believed his online conversations were acts of role play with an adult pretending to be a minor. Hayek explained that the photos he received from the victim were pixelated and blurry, so he had trouble deciphering her age. Hayek expressed that he was intimidated during his interview with law enforcement, and thus he did not tell the truth but rather what he "thought they wanted" to hear. The jury convicted him of all charges, leading to today's appeal.

## II.

A. We begin with Hayek's claim that his statements to law enforcement should have been suppressed. Because Hayek preserved this issue, we review the district court's factual findings for clear error and its legal conclusions de novo, considering the evidence in the light most favorable to the district court's factual findings. *United States v. McCraney*, 674 F.3d 614, 616–17 (6th Cir. 2012).

The Fifth Amendment establishes a well-settled right against self-incrimination. U.S. CONST. amend. V. To effectuate this understanding, the Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966), required that an accused be apprised of his right against self-incrimination as well as his right to counsel before he is subjected to a custodial interrogation. *Moran v. Burbine*, 475 U.S. 412, 420 (1986). Once so instructed, an accused can waive those rights, "provided the waiver is made voluntarily, knowingly, and intelligently." *Id.* at 421 (citation omitted).

As Hayek does not dispute that he was in custody and properly advised of his rights, we turn to the validity of his waiver. To be enforceable, Hayek's waiver must have been "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* And it "must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* We undertake each inquiry with an eye on the totality of the circumstances, including factors such as Hayek's "age, education, and intelligence"; whether he "ha[d] been informed of his *Miranda* rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as deprivation of food or sleep." *Murphy v. Ohio*, 551 F.3d 485, 511 (6th Cir. 2009) (citation omitted).

1. Start with the question whether Hayek's *Miranda* waiver was voluntary. To derive an answer, we ask another set of questions. Was the police conduct objectively coercive? Was the coercion in question sufficient to overbear Hayek's will? And was the purported misconduct the crucial motivating factor in Hayek's decisions to speak? *United States v. Binford*, 818 F.3d 261, 271 (6th Cir. 2016).

The parties offer conflicting testimony on all three fronts. The officers testified that they were neither carrying rifles nor drew their weapons. Before interviewing Hayek in his bedroom (at his request), the officers read him his rights, which he appeared to understand, and he signed a waiver. During the recorded interview, the officers did not yell, make threats, or discuss the immigration status of Hayek's family.

Hayek's version of events was different. He testified he was awoken by four officers at gunpoint. He asked for an attorney and refused to speak to the officers. After about an hour, an officer told Hayek that if he did not speak with them, they would have to look through his family's

5

papers, which he interpreted as a threat to have his family members deported. Only then did he agree to speak to the officers.

In resolving these credibility determinations, the district court sided with the officers. We afford those determinations "great deference," as only the trial court "can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *United States v. Ruiz-Lopez*, 53 F.4th 400, 402–03 (6th Cir. 2022) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)). Seeing no basis to reject those findings, we are left with a straightforward conclusion. The officers did not use coercive tactics, did not point their weapons at Hayek, properly advised him of his rights (which he chose to waive), and did not raise their voices. Even accepting Hayek's testimony that the officers threatened to look through his family's "papers and devices," the district court discerned no objective reason to believe such a search would be related to their immigration status, as opposed to a search for more evidence of child pornography. On this record, Hayek's waiver was voluntary.

2. For Hayek's *Miranda* waiver to be knowing and intelligent, the totality of the circumstances must demonstrate that he understood both the nature and consequences of abandoning his Fifth Amendment right. *United States v. Montgomery*, 621 F.3d 568, 573 (6th Cir. 2010) (citing *Moran*, 475 U.S. at 421–22). The district court concluded that Hayek's waiver was knowing and intelligent. We agree.

Hayek's main point of contention is that he could not consent because he drank heavily the night before the interview and took cough syrup before going to bed, leading to a "panic attack" when officers awoke him the next morning. According to the interrogating officers, however, they did not smell alcohol on Hayek's breath, see any open containers, or observe any impairment. That testimony was consistent with an audio recording of Hayek's interview, during which he

6

sounded alert and responsive. We are again left with "a credibility issue," one that the district court decided in the officers' favor. *Id.* (citation omitted). Add in the fact that Hayek was advised of his rights verbally and in writing, and the totality of the circumstances demonstrates that Hayek knowingly and intelligently waived his *Miranda* rights. *See Murphy*, 551 F.3d at 511.

All told, the district court did not err in concluding that Hayek voluntarily, knowingly, and intelligently waived his *Miranda* rights.

B.   Next, Hayek challenges the sufficiency of the evidence supporting his convictions. When preserved at trial, "[t]he relevant inquiry is whether, 'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Miller*, 982 F.3d 412, 440 (6th Cir. 2020) (considering only whether "the government's case was so lacking that it should not have even been submitted to the jury" (quoting *Musacchio v. United States*, 577 U.S. 237, 243 (2016))). When the issue has not been raised at trial, on the other hand, the conviction will be affirmed absent a "manifest miscarriage of justice," which requires a record "devoid of evidence pointing to guilt." *United States v. Damra*, 621 F.3d 474, 494 (6th Cir. 2010) (citation omitted).

At trial, Hayek challenged Count One (child enticement) and Count Three (transferring obscene material to a minor). Both Counts required the government to prove that Hayek knew the victim was a minor. *See* 18 U.S.C. §§ 1470, 2422(b). As at trial, Hayek asserts there was insufficient evidence that he knew the victim was underage—and not an adult role playing as a child. But significant evidence suggests he knew he was speaking to a minor. During his interview, Hayek acknowledged that he knew the victim was underage. Likewise, the victim

testified that she told Hayek she was ten, a point corroborated by screenshots of their chats. The victim also sent Hayek multiple photos of her face and body; the two even videochatted. When an officer assumed the victim's identity, she repeatedly mentioned that she was ten years old, which Hayek responded was "really young." From this collection of evidence, a reasonable juror could conclude that Hayek knew the victim was underage.

Hayek also challenges Counts Two, Four, and Five—charges of child enticement for purpose of producing a visual depiction, receiving child pornography, and possessing child pornography—on the same grounds. But he failed to do so at trial, making his climb even steeper. *Damra*, 621 F.3d at 494. And even setting aside the fact that Count Two did not require knowledge of the victim's age, *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 76 n.5 (1994), the record is not "devoid of evidence pointing to guilt." Accordingly, no "manifest miscarriage of justice" occurred. *Damra*, 621 F.3d at 494.

C. Hayek also faults the district court for denying his request for a bill of particulars as to Counts One and Two. By rule, a court "may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). The bill serves a number of purposes. It helps "inform the defendant of the nature of the charge[s]," thereby affording the defendant "sufficient precision" for purposes of trial preparation. *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir. 1976). It aims "to avoid or minimize the danger of surprise at the time of trial." *Id.* And it enables the defendant to enter a knowing plea where "the indictment itself is too vague[] and indefinite for such purposes." *Id.*; *see also United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993). At the same time, a bill of particulars is not intended as a means for a defendant to "obtain detailed disclosure of all evidence held by the government before trial." *Id.*

The decision to grant a bill of particulars "is within the sound discretion of the trial court." *Id.* On appeal, Hayek must show that the denial of the bill was an abuse of discretion and resulted in actual surprise or other prejudice at trial. *Id.* Even if an abuse of discretion occurred, Hayek failed to demonstrate prejudice. The indictment provided Hayek with the elements and the approximate dates of the offenses. What is more, he received the conversations and images at issue well before trial. While Hayek believes he should have been informed of "the exact conduct for which he had to defend himself," he fails to identify how this information would have affected his trial preparation. In short, Hayek suffered no prejudice.

D. Next, Hayek contends that the district court erred by admitting the victim's recorded statement under Federal Rule of Evidence 807, the residual hearsay exception. Rule 807 instructs that an otherwise inadmissible hearsay statement may be admitted if (1) "the statement is supported by sufficient guarantees of trustworthiness"; and (2) "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a).

Hayek's course of litigation lacks congruence. In the district court, he challenged the video's admissibility only under Federal Rule of Evidence 403. He did not also invoke Rule 807. As a result, on appeal, we review the evidence's admissibility under Rule 807 for plain error, *United States v. Cox*, 871 F.3d 479, 488 (6th Cir. 2017), meaning Hayek must show (1) an error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings, *United States v. Johns*, 65 F.4th 891, 893 (6th Cir. 2023).

He has not done so. The district court found that the video was more probative than other available evidence primarily because the victim's statements were made closer in time to the online

9

conversations at issue than her testimony at trial. Because roughly four years passed between Hayek's offenses and the trial, the court reasoned that the video offered "likely [the victim's] strongest recollection" of the incident. We too have previously allowed the admission of statements of minors under Rule 807 in part because they were made contemporaneously with the alleged offenses. *See, e.g.*, *United States v. Wandahsega*, 924 F.3d 868, 881–82 (6th Cir. 2019); *Stuart v. Wilson*, 442 F.3d 506, 523–24 (6th Cir. 2006). In view of this existing precedent, admission of the video, even if error, was not an obvious error. *See Johnson v. United States*, 520 U.S. 461, 468 (1997) (noting error must be "clearly contrary to the law at the time of appeal").

Even were that not the case, any error was harmless. *See Rosales-Mireles v. United States*, 585 U.S. 129, 134–35 (2018) (requiring "a reasonable probability that, but for the error, the outcome of the proceeding would have been different" (cleaned up)). That is so for two reasons. One, even if the district court had initially refused to admit the video under Rule 807, it likely became admissible once Hayek challenged the victim's credibility on cross-examination, thereby opening the door to admissibility under Rule 801(d)(1)(B), which permits admission of prior consistent statements. *See, e.g.*, *United States v. J.A.S., Jr.*, 862 F.3d 543, 545 (6th Cir. 2017). Two, the evidence of Hayek's guilt was substantial. Considering Hayek's admissions, the contents of the chats and images, the victim's testimony, and testimony from law enforcement, it is hard to fathom how, but for the admission of the victim's recorded interview, Hayek would have been acquitted. *See Rosales-Mireles*, 585 U.S. at 134–35.

E. Finally, Hayek argues that the admission of the entirety of his interview with law enforcement, which included statements about other conversations with minors, ran afoul of Federal Rules of Evidence 404(b) and 403. The former permits admission of evidence of other crimes or bad acts offered for a purpose other than to prove character, "such as proving motive,

opportunity, intent, preparation, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The latter instructs the district court to balance the probative value of evidence against its risk of unfair prejudice. Fed. R. Evid. 403.

Although he sought suppression of his statements on Fifth Amendment grounds, Hayek did not object under Rules 404(b) or 403, so we review for plain error. *United States v. Willoughby*, 742 F.3d 229, 236 (6th Cir. 2014). Regardless, we can resolve Hayek's argument on harmless error grounds. On that score, Hayek failed to prove "a reasonable probability that, but for [any purported] error, the outcome of the proceeding would have been different." *Rosales-Mireles*, 585 U.S. at 134–35 (cleaned up). As discussed, ample evidence reflected Hayek's guilt. His admissions during the interview largely sealed his fate. And then consider the contents of his chats, the victim's testimony, and the testimony of the officer who assumed the victim's persona. Hayek believes this evidence "permitted him to be tried, in essence on his proclivity to talk [to] people he thought were underage." The record does not support this contention. For instance, Hayek fails to cite any portion of the transcript where the government made a propensity argument, explicitly or otherwise. In short, there is not a reasonable probability that, but for the admission of Hayek's statements about other conversations with minors, he would have been acquitted of any of the charges.

*     *     *     *     *

We affirm the judgment.