judgment; but the total judgment cannot exceed $25,000.00.

The amount of counsel fees assessed has not been questioned and, consequently, we need not inquire into the standards utilized in fixing the awards. *Cf. Estien v. Christian,* 507 F.2d 61, 64 (3d Cir. 1975).

The judgment of the district court will be affirmed.

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Glen Ray BIRMLEY et al.,**
**Defendants-Appellants.**

**No. 75–1161.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 29, 1975.

Decided Jan. 29, 1976.

Cecil D. Branstetter, Branstetter, Moody & Kilgore, Carrol D. Kilgore, Nashville, Tenn., for defendants-appellants.

Charles H. Anderson, U. S. Atty., Joe B. Brown, Asst. U. S. Atty., Nashville, Tenn., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, WEICK, Circuit Judge, and HARVEY, District Judge.*

HARVEY, District Judge.

This appeal is from a non-jury conviction on a two count indictment charging defendants with possession of unregistered firearms in violation of 26 U.S.C. § 5861(d) and 18 U.S.C. § 2.

In lieu of a formal trial proceeding, pursuant to stipulation between all the parties, this case was tried by the District Court Judge upon the submission to the Court of the record consisting of: (1) the testimony given at the preliminary hearing, (2) the testimony given at the hearing of the defendant's motion to suppress evidence and (3) the certificates of non-registration of the firearms which are the subject matter of this case.

From stipulated record the relevant facts may be summarized as follows:

On October 4, 1973 the residence of Mr. James Oakley of Kingston, Tennessee, was burglarized and a quantity of firearms was stolen from his property. Included in this quantity of stolen fire-

---

* The Honorable James Harvey, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

arms were two short barreled weapons which were legally registered to Mr. Oakley.

On October 5, 1975 Mr. Billy Trew, a resident of Nashville, Tennessee, received a phone call at work at about 10:00 a. m. from a man known to him as "Easy Money" who was later identified as defendant Birmley. "Easy Money" offered for sale a quantity of stolen guns which included the firearms here in question. The caller said that he was on his way to Nashville and would bring the firearms so Mr. Trew could try to locate someone to buy them. Mr. Trew was told that the call was long distance from down in Georgia, somewhere outside of Atlanta.

Mr. Trew received two more calls at work later the same day, at 1:00 p. m. and 3:00 or 3:30 p. m. respectively. Mr. Trew was informed that "they" were outside of Chattanooga on their way to Nashville and would be into Nashville later. No exact time of arrival was then given to Mr. Trew.

After the third call, Mr. Trew called Agent Cheshire of the Federal Bureau of Alcohol, Tobacco and Firearms. Agent Cheshire received the call at about 4:00 p. m. or shortly thereafter. The agent was advised of the earlier conversations Mr. Trew had with "Easy Money" regarding the stolen guns. Mr. Trew was instructed to call back later with more information as it developed.

At about 8:30 p. m., Agent Cheshire received a call from Mr. Trew who advised him that "they" were definitely coming to Nashville and planned to meet with him. At this time, Mr. Trew was advised that Agent Cheshire would try to get some other officers together in order to cover a meeting place which the agent suggested near Harding Road and Nolenville Road in Nashville. The agent further advised that he would call Mr. Trew and give him a telephone number where the agent could be reached near the meeting place.

After obtaining the assistance of other state and federal officers, Agent Cheshire went to a phone booth across the street from the K–Mart Shopping Center at Nolenville and Harding Road in Nashville and called Mr. Trew about 9:15 p. m. in order to give him the phone booth number and finalize the location of the meeting place. Agent Cheshire instructed Mr. Trew to telephone him at the phone booth when the "people" called and said they were in town with the guns. Mr. Trew was to tell the people to meet him at a drive-up phone booth in the parking lot at the K–Mart. Mr. Trew was to find out what kind of car they were in and relay this information to Agent Cheshire, who would be waiting for them.

Agent Cheshire waited near the K–Mart until Mr. Trew called at about 10:40 p. m. and advised that the people would meet him at the K–Mart parking lot and would be driving a white over beige or brown 1963 Ford with Georgia license plates. Upon receiving this information, the federal agent with the assistance of the others, immediately went over to the K–Mart and observed the above described automobile with the three appellants in it, parked at the phone booth. Agent Cheshire and others seized the parked vehicle by placing their vehicles in the immediate front and rear of the parked vehicle.

All three appellants were arrested and searched once they exited the vehicle. Appellant Capps was in the driver's seat of the car and was found to have the automobile trunk key located separately apart from the ignition key in his watch pocket. Appellant Birmley was occupying the front passenger seat and was the owner of the automobile. Appellant Sexton was a passenger in the rear seat of the seized vehicle.

At the scene of the arrest, the trunk of the vehicle was opened and searched. The trunk contained four bundles of rifles and shotguns wrapped in bed linens and a small duffle bag containing handguns and the two short barreled weapons that are named in the above mentioned indictment.

Based upon the stipulated record, the District Court Judge found the appel-

lants and each of them guilty of the illegal possession of unregistered firearms under both counts of the indictment.

Appellants raise a number of issues on appeal. The assignments of error are as follows: that the lower court erred in admitting into evidence the weapons seized, for such were the fruits of an illegal search and seizure; that the authorizing statute under which appellants are charged is unconstitutional; that there was insufficient competent evidence to convict the appellants of the charges alleged in the indictment; and that the trial court erred in denying appellants' demand for a bill of particulars.

First, appellants contend that the warrantless search was unreasonable for the federal agents had sufficient time prior to the search to seek a search warrant from either a federal magistrate or a state court.

The record is clear that under the circumstances, there was insufficient time to obtain a search warrant and that there was probable cause for a seizure of the vehicle and a search of the trunk.

■ We must give the Fourth Amendment a practical interpretation and follow common sense standards for establishing probable cause for such is mandated by *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

■ Probable cause for the officers to arrest the appellants certainly existed after all the above facts finally came to the officers' attention. Since probable cause to search the automobile existed, such probable cause furnished the officers a sufficient basis for searching the vehicle at the scene without a warrant. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

■ Also, it is not necessary to obtain a search warrant if it appears likely at the time that the delay incident to obtaining a warrant would result in losing the opportunity to apprehend a law vio-

lator. Such is the case here. The above is true even though it later develops that sufficient time had been available in which a search warrant could have been obtained. *United States v. Thomas*, 319 F.2d 486 (6th Cir. 1963). Here the officers did not have the full information until late in the evening of the arrest. Given these circumstances then and now, there appears no time when the officers could have obtained a search warrant without losing the opportunity to apprehend the appellants.

■ The warrantless search was reasonable and therefore the fruits of said search were admissible into evidence. We find no error here.

Next, the appellants assert that the statute under which they were convicted is itself unconstitutional as not being authorized by the Necessary and Proper Clause of Article I of the Constitution and/or as an exercise of a power expressly denied Congress by the Second Amendment to the Constitution.

Congress could have prohibited the transfer of firearms altogether. Instead, it chose to permit transfer subject to well-defined regulation. *Varitimos v. United States*, 404 F.2d 1030, 1032, note 4 (1st Cir. 1968), *cert. den.*, 395 U.S. 976, 89 S.Ct. 2126, 23 L.Ed.2d 765 (1969).

■ The taxing power of Congress provides the authority to validate the provisions of 26 U.S.C. 5861(d), *Sonzinsky v. United States*, 300 U.S. 506, 514, 57 S.Ct. 554, 81 L.Ed. 772 (1937). Citing the above authority, the basic issue of validity was previously considered by the Fifth Circuit.

"Test of validity is whether on its face the tax operates as a revenue generating measure and the attendant regulations are in aid of a revenue purpose . . . (citations omitted) . . . Furthermore, that an act accomplishes another purpose than raising revenue does not invalidate it. (citation omitted) Section 5861(d) making possession of an unregistered weapon unlawful is part of the web of regulation aiding enforcement of the transfer tax

provision in § 5811. Having required payment of a transfer tax and registration as an aid in collection of that tax, Congress under the taxing power may reasonably impose a penalty on possession of unregistered weapons. Such a penalty imposed on transferees ultimately discourages the transferor on whom the tax is levied from transferring a firearm without paying the tax."

United States v. Ross, 458 F.2d 1144, 1145 (5th Cir. 1972), cert. den., 409 U.S. 868, 93 S.Ct. 167, 34 L.Ed.2d 118 (1972). See also United States v. Matthews, 438 F.2d 715, 716–717 (5th Cir. 1971); United States v. Smith, 341 F.Supp. 687, 688–689 (D.C.N.D.Ga., 1972).

■ As for the appellants' contention that the statutes under which they are charged are violative of their right to bear arms as guaranteed by the Second Amendment to the Constitution, this Court must agree with the Supreme Court and the Ninth and Fifth Circuit Courts that have reviewed this question and have answered it adversely to appellants' contention. United States v. Miller, 307 U.S. 174, 178, 59 S.Ct. 816, 818, 83 L.Ed. 1206 (1939); United States v. Tomlin, 454 F.2d 176 (9th Cir. 1972); United States v. Williams, 446 F.2d 1401 (5th Cir. 1971).

The appellants further contend that the government's evidence is insufficient to establish "possession" of the named firearms.

■ Although we recognize that the "possession" necessary for conviction of these offenses may be constructive as well as actual, United States v. Craven, 478 F.2d 1329, 1333 (6th Cir. 1973), this Court believes that judicial decisions have only established vaguely defined guidelines as to the evidentiary require-ments necessary to prove constructive possession.[1]

■ However, under the existing guidelines in this Circuit, the record contains sufficient evidence to sustain a guilty verdict as to appellants Birmley and Capps. They can be reasonably found to have had "constructive" possession of the firearms. Birmley, a/k/a "Easy Money" was shown to be the owner of the car, containing the weapons, present in the car when it was seized and was the person identified by Mr. Trew to be the one who had called him on several occasions on the day of the arrest to set up the meeting place in order to sell the guns. Appellant Capps was arrested while occupying the driver's seat of the seized vehicle and the trunk key which allowed access to the trunk, the place where the guns were found, was located separately in his watch pocket.

■ Since the evidence against Sexton consists almost[2] exclusively of his presence as a passenger in the rear seat of the vehicle, it is our view that the evidence is quite insufficient to support either a conviction for illegal possession of unregistered firearms or aiding and abetting in their possession.

■ Constructive possession requires that a person knowingly have the power or the intention at a given time to exercise dominion and control over an object, either directly or through others. United States v. Craig, 522 F.2d 29 (6th Cir. 1975), decided September 23, 1975. United States v. Craven, supra.

■ Mere presence on the scene plus association with illegal possessors is not enough to support a conviction for illegal possession of an unregistered firearm. Presence alone cannot show the requisite

---

1. See the comments of Judge Tamm pointing out the unsatisfactory and confused condition of the state of law on proof of constructive possession. United States v. Holland, 144 U.S. App.D.C. 225, 445 F.2d 701, 703 (1971).

2. The record contains reference to "they," "them," "the people," when Agent Cheshire and Mr. Trew speak of the appellants coming into Nashville with the weapons. Such references may allow vague inferences of "joint" possession to be drawn as to Sexton.

knowledge, power, or intention to exercise control over the unregistered firearms. See *United States v. Craig, supra; United States v. Clunn,* 457 F.2d 1273 (10th Cir. 1972); *United States v. Davis,* 346 F.Supp. 405 (D.C.D.W.Pa. 1972); *United States v. Holland, supra.*

However, other incriminating evidence, coupled with presence, as in the case of Birmley and Capps will serve to tip the scale in favor of sufficiency. See *United States v. Ransom,* 515 F.2d 885 (5th Cir. 1975); *United States v. Thomas,* 497 F.2d 1149 (6th Cir. 1974); *United States v. Phillips,* 496 F.2d 1395 (5th Cir. 1974); and *United States v. Craven, supra.*

We need not deal in this opinion with appellants' hypothetical inquiry into the situations of an innocent finder, a community property owner, an administrator of an estate and/or a thief taking possession of an unregistered firearm. The record reveals no competent evidence that would indicate that appellants fall into one or more of the above categories. But see *United States v. Johnson, supra,* pages 1135–1136.

The last remaining issue on appeal is whether the District Court erred in refusing to order the government to file a Bill of Particulars.[3]

■ The purposes of a bill of particulars are to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes. *United States v. Haskins,* 345 F.2d 111 (6th Cir. 1965).

■ We find upon a fair reading of the indictment that its language is sufficiently specific so that a bill of particulars was not required and no abuse of

discretion by the district judge is apparent under the circumstances.

Therefore, for all the above reasons, we hold that the convictions of Birmley and Capps are affirmed and the conviction of Sexton is reversed.

---

**3.** Defendants assert the right to know more specifically which of them were the principals and which were the aiders and abetters, and what particular acts were done by such aiders and abetters.