NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0501n.06

No. 22-5068

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 06, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| JULIAN WILSON, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

Before: MOORE, CLAY, and NALBANDIAN, Circuit Judges.

MOORE, J., delivered the opinion of the court in which CLAY, J., joined. NALBANDIAN, J. (pp. 12–22), delivered a separate dissenting opinion.

**KAREN NELSON MOORE, Circuit Judge.** Julian Wilson pleaded guilty to possessing methamphetamine with intent to distribute. At sentencing, the district court applied a two-level enhancement for possession of a firearm during the offense. In applying this enhancement, the district court clearly erred. Accordingly, we **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

**I. BACKGROUND**

In the months leading up to Julian Wilson's arrest, he was involved in a number of drug-related incidents. On December 20, 2018, the police pulled over a Ford Fusion that had an improperly displayed registration and illegal window tinting. R. 50 (Presentence Investigation Report (PSR) ¶ 6) (Page ID #88). The driver—later identified as Wilson—fled on foot. *Id.* The police found in the Ford Fusion two bags collectively containing 7.3 ounces of methamphetamine,

a bottle containing approximately 1,010 pills, a ledger, a cellphone, a handgun, and various drug paraphernalia. *Id.* ¶ 6 (Page ID #88–89). On February 19, 2019, a confidential source purchased eight ounces of meth from Wilson. *Id.* ¶ 8 (Page ID #89). The source again purchased the same amount of meth from Wilson on March 11, 2019. *Id.* ¶ 9 (Page ID #89).

On April 5, 2019, officers responding to a shoplifting call saw three individuals matching the suspects' description exiting a Ford F-150 truck. *Id.* ¶ 10 (Page ID #89). Austin Williams, who owned the Ford F-150, had been in the driver's seat. *Id.* Carrie Stephens exited the backseat of the vehicle on the passenger's side, and Wilson left from the backseat on the driver's side. *Id.* The police searched Wilson and found on his person 92.23 grams of meth, two Xanax bars, assorted pills, a digital scale, and $649. *Id.* ¶ 11 (Page ID #90). Various drugs were also found in the car and on Williams. *Id.* ¶¶ 10, 12 (Page ID #89–90).

The police found three loaded firearms in the Ford F-150. A revolver was under the front passenger seat. *Id.* ¶ 12 (Page ID #90). A handgun was in the back pocket of the front passenger seat. *Id.* A rifle was underneath the rear seat, and Wilson had exited the vehicle from the rear seat on the driver's side. *Id.* ¶¶ 10, 12 (Page ID #89–90). The rifle was not visible without first lifting the seat.[1] R. 70 (Tr. at 43) (Page ID #212).

Wilson pleaded guilty to three counts of possessing during 2019 more than 50 grams of methamphetamine with intent to distribute. R. 65 (J. at 1) (Page ID #147). At sentencing, the

---

[1]At the sentencing hearing, both the government and the defense agreed that the rifle was located underneath the rear seat of the Ford F-150. R. 70 (Tr. at 40, 43) (Page ID #209, 212). There was no testimony or argument at the sentencing hearing, nor is it stated in the PSR, regarding from which side under the rear seat the rifle was recovered. *See id.*; R. 50 (PSR ¶ 12) (Page ID #90). Wilson's attorney stated that, "from the photographs we were provided in discovery," the rifle "would not have been visible to anybody sitting in that seat" and that "[t]he seat had to be lifted to see [the rifle]." R. 70 (Tr. at 43) (Page ID #212). The defense further stated that it was "factually undisputed that none of [the firearms in the Ford F-150] were visible, none of them were in plain view." *Id.* at 44 (Page ID #213). The government did not contest this point.

parties disputed whether Wilson should receive a two-level sentencing enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possessing a firearm during the offense. R. 70 (Tr. at 38–49) (Page ID #207–18). The district court found "that at least as it relates to the rifle, the .357, 38 special rifle, that Mr. Wilson was in constructive possession of that firearm, and that he has not been able to demonstrate that it's clearly improbable that the firearm was connected in any way to the drug offense." *Id.* at 48–49 (Page ID #217–18).

Thus, the district court applied the § 2D1.1(b)(1) enhancement. *Id.* at 49 (Page ID #218). This led to an offense level of 31. *Id.* Wilson had a criminal history category of VI, so the guideline range was 188 to 235 months. *Id.* at 49–50 (Page ID #218–19).[2] After hearing from both Wilson and Wilson's mother, the district court sentenced Wilson to 180 months of incarceration, just below the guideline range. *Id.* at 81 (Page ID #250). Wilson timely appealed. R. 68 (Notice of Appeal) (Page ID #166).

## II. ANALYSIS

We review for clear error a district court's factual finding that a defendant possessed a firearm during a drug crime. *United States v. Miggins*, 302 F.3d 384, 390 (6th Cir. 2002). Under this standard, we will affirm unless we are "left with the definite and firm conviction that a mistake has been committed." *United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020) (quoting *United States v. Orlando*, 363 F.3d 596, 603 (6th Cir. 2004)).

U.S.S.G. § 2D1.1(b)(1) provides a two-level enhancement if the defendant possessed a dangerous weapon, including a firearm, during the commission of a drug offense. "The

---

[2]Without the enhancement, the guideline range would have been 151 to 188 months. *See* U.S.S.G. Sent'g Table (Offense Level 29, Criminal History Category VI).

government must prove by a preponderance of the evidence 'that (1) the defendant actually or constructively possessed the weapon, and (2) such possession was during the commission of the offense.'" *United States v. Johnson*, 344 F.3d 562, 565 (6th Cir. 2003) (quoting *United States v. Pruitt*, 156 F.3d 638, 649 (6th Cir. 1998)). Once the government meets its burden, the enhancement applies unless the defense shows that "it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. (n.11).

"Constructive possession of an item is the 'ownership, or dominion or control' over the item itself, 'or dominion over the premises' where the item is located." *Id.* (quoting *Pruitt*, 156 F.3d at 649). This standard requires a showing of intent, and "[p]resence alone cannot show the requisite knowledge, power, or intention to exercise control." *United States v. Bailey*, 553 F.3d 940, 945 (6th Cir. 2009) (quoting *United States v. Birmley*, 529 F.2d 103, 107–08 (6th Cir. 1976)). Even "[w]here the defendant shares possession of the premises where contraband is found, additional incriminating evidence must show the defendant knew of and controlled the contraband." *United States v. Wren*, 528 F. App'x 500, 506 (6th Cir. 2013) (citing *Bailey*, 553 F.3d at 944 n.3). And, in *Bailey*, we explained that the mere fact that a firearm was underneath a driver's seat does not establish that the driver constructively possessed the firearm. 553 F.3d at 945–46. Because *Bailey* involved a sufficiency-of-the-evidence challenge, the government had been required to prove constructive possession beyond a reasonable doubt. But *Bailey*'s principles apply in the sentencing-enhancement context as well. *See, e.g.*, *United States v. Lanier*, 850 F. App'x 419, 421 (6th Cir. 2021) (relying on *Bailey* in a challenge to the sentencing enhancement); *United States v. Penaloza*, 648 F. App'x 508, 516 (6th Cir. 2016) (same). Thus, something more than proximity is required to show constructive possession. *Bailey*, 553 F.3d at 947–48.

4

## A. April 2019 Arrest

There were not adequate facts to support the district court's finding that Wilson constructively possessed one of the three firearms found in the Ford F-150 at the time of Wilson's April 2019 arrest. *See* R. 70 (Tr. at 48–49) (Page ID #217–18).[3] The prosecution did not present evidence that the rifle was visible or that Wilson knew it was under the seat. *See id.* at 43 (Page ID #212). Passengers could not see the rifle unless the seat was lifted. *Id.* The *only* evidence that the prosecution offered to show constructive possession was the rifle's location under the seat and the prosecutor's assertion that Wilson "would have access" to the rifle in that location. *Id.* at 41 (Page ID #210). This evidence showed "merely the location of a firearm near" Wilson, not constructive possession. *See Bailey*, 553 F.3d at 947–48. A "defendant's mere presence in a car where a gun is found and proximity to a gun are insufficient proof of constructive possession." *United States v. Newsom*, 452 F.3d 593, 609 (6th Cir. 2006).

The dissent's analysis on this point misses the mark. The dissent insists that the rifle was in "reaching distance" to Wilson, but the rifle could not be viewed without lifting the seat, and

---

[3]Earlier in the sentencing hearing, the district court suggested that Wilson may have constructively possessed the firearm in the back pocket of the front passenger's seat as well. R. 70 (Tr. at 47) (Page ID #216). However, at the time that the district court made this statement, it was under the mistaken impression that Wilson was sitting on the same side of the vehicle as this firearm. *Id.* Despite the dissent's suggestion to the contrary, after defense counsel corrected this misconception, the district court found that Wilson constructively possessed only the rifle that was underneath his seat. *Id.* at 48 (Page ID #217) ("So the Court would find that at least as it relates to the rifle, the .357, 38 special rifle, that Mr. Wilson was in constructive possession of that firearm, and that he has not been able to demonstrate that it's clearly improbable that the firearm was connected in any way to the drug offense."). The district court reiterated this finding later in the hearing. *Id.* at 71 (Page ID #240) ("[T]he Court has found that Mr. Wilson was in constructive possession of at least one of the firearms that was located in that particular vehicle [on April 5, 2019]."). We therefore do not address the firearm in the back pocket of the front passenger's seat because it did not form the basis for the enhancement. The dissent improperly relies on that firearm in its analysis when even the government does not argue any basis for the enhancement beyond the rifle. Even if we were to consider that firearm, our analysis in this section would apply with even more force to that firearm, because it was concealed in the back pocket of the front passenger's seat, on the opposite side of the car from Wilson, and in much closer proximity to one of the other occupants, who exited from the passenger's side of the vehicle. *Id.* at 40, 43–44 (Page ID #209, 212–13); R. 50 (PSR ¶¶ 10, 12) (Page ID #89–90).

thus it is illogical to assume that someone sitting in Wilson's location could simply reach for the rifle without first exiting the vehicle to lift the seat. *See* R. 70 (Tr. at 43) (Page ID #212). The dissent's emphasis on the size of the rifle is likewise irrelevant, because again, the rifle was not even visible without lifting the seat, and thus its size makes it no more or less likely that Wilson would be aware of its presence. And although the firearm was located near Wilson, we have repeatedly held that proximity alone is insufficient to show constructive possession. *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2008) (en banc); *Bailey*, 553 F.3d at 947–48; *Newsom*, 452 F.3d at 609; *United States v. Vichitvongsa*, 819 F.3d 260, 275–76 (6th Cir. 2016). Instead, "[o]ther incriminating evidence" such as "a 'connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise" or a "statement of ownership" is needed in combination with proximity to show constructive possession. *Vichitvongsa*, 819 F.3d at 276 (quoting *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008)).

The dissent also repeatedly highlights the presence of drugs and drug paraphernalia in the Ford F-150, but the relevant legal question now before us in determining the application of the firearm enhancement is Wilson's possession—actual or constructive—of the rifle. *See Johnson*, 344 F.3d at 565 (quoting *Pruitt*, 156 F.3d at 649). The drugs and related paraphernalia were recovered from Wilson's person, from Williams's person, and from under the front passenger's seat, on the opposite side of the vehicle from where Wilson was sitting. R. 50 (PSR ¶¶ 10–12) (Page ID #89–90). Wilson pleaded guilty to possession with intent to distribute in excess of fifty grams of methamphetamine, R. 65 (J. at 1–2) (Page ID #147–48), which related to the approximately ninety-two grams of methamphetamine recovered from his sock, R. 50 (PSR ¶ 11)

(Page ID #90); R. 3 (Indictment at 2) (Page ID #4). He did not plead guilty to possessing the other

drugs recovered from the F-150. *See* R. 65 (J. at 1–2) (Page ID #147–48). Thus, the presence of

other drugs and drug paraphernalia not near him in the Ford F-150 provides no insight into whether

Wilson possessed the rifle. And there were two other occupants of the Ford F-150, one of whom

was both the driver and the owner of the vehicle, and thus was much more likely to be in possession

of the contents of the vehicle than Wilson was.[4] *See id* ¶ 10 (Page ID #89–90).

The dissent claims that the government could have proven Wilson's possession of the rifle

either through him or through the other occupants of the Ford F-150. But the government chose

not to do so. And the dissent ignores the fact that proving possession through another individual

still requires a showing that the defendant "exercise[s] dominion and control over" the firearm.

*Vichitvongsa*, 819 F.3d at 275 (quoting *Campbell*, 549 F.3d at 374). More evidence is needed to

demonstrate possession through another individual than exists here. For example, in *Vichitvongsa*,

a police officer observed a firearm sticking out from under the driver's seat of a car that the

defendant was driving (but that he did not own) *and* the defendant made an admission of ownership

of the firearm on a jailhouse call. *Id.* at 275–76.

For these reasons, this case is therefore unlike others in which the police saw the defendant

reach down to hide something under a seat, a firearm was near the seat in plain view of the

passenger, the defendant indicated that they knew the firearm was in the car, or the defendant

---

[4]Mystifyingly, the dissent suggests that the presence of the other occupants of the Ford F-150 somehow "bolsters" Wilson's possession of the rifle, despite the fact that their presence raises the possibility that the firearms were possessed exclusively by them, and not by Wilson. This is a particularly strong possibility given that one of the other occupants was both the driver and the owner of the vehicle. Indeed, in discussing the December 2018 traffic stop, the dissent highlights the fact that Wilson was the sole occupant, driver, and possible owner of the vehicle as demonstrating why he had possession of the handgun. The dissent's "heads I win, tails you lose" logic cannot stand. Either ownership and sole occupancy of a vehicle matters for constructive possession, or it does not.

brandished the firearm minutes before being apprehended. *See Bailey*, 552 F.3d at 949 (collecting cases); *United States v. Walker*, 734 F.3d 451, 457 (6th Cir. 2013); *Arnold*, 486 F.3d at 183; *United States v. Penaloza*, 648 F. App'x 508, 516 (6th Cir. 2016); *United States v. Montague*, 438 F. App'x 478, 481 (6th Cir. 2011). In those cases, facts beyond mere proximity supported a finding of constructive possession of a firearm. In this case, no such facts were presented to the district court. Because no other facts support the constructive-possession element of the firearm enhancement, we are left with the firm conviction that the district court erred.

## B. December 2018 Traffic Stop

We take a moment to respond to a significant misconception in the dissent. The dissent suggests that the district court found that the enhancement alternatively applied based on the firearm recovered from the Ford Fusion following the December 2018 traffic stop, and that we could uphold the enhancement on that basis. But the district court plainly applied the firearm enhancement based on the rifle in the April 2019 incident alone. The dissent's citations to the contrary are inapposite, because they reference the government's arguments at sentencing, and not the district court's findings. And even the government does not argue on appeal that we can affirm the application of the enhancement based on the December 2018 traffic stop.

At Wilson's sentencing hearing, the district court emphasized that, because "there was no direct testimony about the visibility of that particular firearm [recovered in December 2018]," applying the enhancement on that basis would be "a closer call for the Court." R. 70 (Tr. at 46) (Page ID #215). The district court instead found that, "[t]he April 5th [incident], is a little easier, as far as the Court is concerned, to make a conclusion that Mr. Wilson was, in fact, in constructive

8

possession" of a firearm. *Id.* The district court analyzed the facts of the April 2019 incident at length, before concluding that:

> [T]he Court would find that at least as it relates to the rifle [recovered in April 2019], the .357, 38 special rifle, that Mr. Wilson was in constructive possession of *that* firearm, and that he has not been able to demonstrate that it's clearly improbable that the firearm was connected in any way to the drug offense. So I'm going to find that the enhancement at paragraph 20 would apply in this case for the reasons previously stated.[5]

*Id.* at 48–49 (Page ID #217–18) (emphasis added). Later in the hearing, the district court summarized its findings. While recounting the December 2018 traffic stop, the district court found simply that "there was a handgun located in that vehicle." *Id.* at 70 (Page ID #239). There was no mention of whether Wilson *possessed* the handgun, a necessary finding for the application of the enhancement on that basis. *See Johnson*, 344 F.3d at 565 (quoting *Pruitt*, 156 F.3d at 649). After summarizing the April 2019 incident, however, the district court explicitly stated that it "found that Mr. Wilson was in constructive possession of at least one of the firearms that was located in that particular vehicle." R. 70 (Tr. at 71) (Page ID #240).

The dissent claims that, even if the district court did not apply the enhancement based on the December 2018 incident, we can still affirm on that ground. But the dissent forgets that we give deference to a sentencing court's factual findings on firearm possession. *See West*, 962 F.3d at 187. Here, the district court did *not* find that Wilson possessed a firearm related to the December 2018 traffic stop. Instead, the district court clearly expressed that the lack of "direct testimony

---

[5]The dissent claims that the district court's finding that "the enhancement at paragraph 20 [of the PSR] would apply in this case" demonstrates that the district court found the enhancement applied based on both the April 2019 and December 2018 incidents. But the dissent's quotation omits a key portion of the district court's finding: "that the *enhancement* at paragraph 20 would apply in this case *for the reasons previously stated*." R. 70 (Tr. at 49) (Page ID #218) (emphasis added). Thus, the district court applied the enhancement for the reasons it had previously stated in the hearing—about the rifle from the April 2019 incident—not for the reasons provided in paragraph 20.

about the visibility of that particular firearm" inside the Ford Fusion made it difficult to reach a finding that Wilson constructively possessed the handgun, which was required to apply the enhancement based on the December 2018 traffic stop. R. 70 (Tr. at 46) (Page ID #215).

Even if we were to reach the issue, we would conclude that the government did not show that Wilson possessed the handgun recovered from the Ford Fusion following the December 2018 traffic stop. The government presented evidence that Wilson occupied the vehicle where the handgun was found, *id.* at 13 (Page ID #182), but presented no evidence regarding the visibility of the handgun in the vehicle, *id.* at 46 (Page ID #215). And mere presence of a firearm in the vehicle, without more, is insufficient to demonstrate constructive possession of the firearm. *Bailey*, 553 F.3d at 945. Although there is some evidence that Wilson indicated in a police report filed some time before December 2018 that he possessed the Ford Fusion, it was in fact owned by his girlfriend. R. 70 (Tr. at 15–17) (Page ID #184–86). And, approximately one hour after the December 2018 traffic stop, Wilson's girlfriend reported that her vehicle had been stolen and that she had not allowed anyone to borrow it, suggesting that Wilson did not have possession of the vehicle. *Id.* at 16 (Page ID #185). But even if Wilson did share possession of the vehicle, "additional incriminating evidence must show the defendant knew of and controlled the contraband." *Wren*, 528 F. App'x at 506 (citing *Bailey*, 553 F.3d at 944 n.3). The government presented no such evidence. And, as the district court noted, the government also presented no evidence regarding the visibility of the handgun. R. 70 (Tr. at 46) (Page ID #215).

We therefore find no reason to disturb the district court's determination on this point, especially given that it is uncontested by the parties on appeal. Thus the dissent's entire analysis of the December 2018 firearm is not only inapposite but also inappropriate.

## III.  CONCLUSION

For the foregoing reasons, we conclude that the district court clearly erred in applying the sentencing enhancement pursuant to § 2D1.1(b)(1).  We therefore **REVERSE** and **REMAND** for resentencing consistent with this opinion.

**NALBANDIAN, Circuit Judge, dissenting.** The district court did not err when it enhanced Wilson's sentence. Two separate incidents—each involving drugs, guns, vehicles, and Wilson—led the court to reasonably conclude that Wilson had constructive possession of at least one gun while distributing methamphetamine. Finding no error, I respectfully dissent.

## I.

We afford great deference to a sentencing court's factual findings on firearm possession. *United States v. Bartholomew*, 310 F.3d 912, 924 (6th Cir. 2002). So much so that we must uphold an enhancement if the court "has interpreted the evidence in a manner consistent with the record." *United States v. Darwich*, 337 F.3d 645, 664 (6th Cir. 2003) (citing *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74 (1985)). And even if "two permissible views of the evidence" exist, we cannot hold that "the factfinder's choice between them . . . [is] clearly erroneous." *Id.* (quoting *Anderson*, 470 U.S. at 574).

Generally, constructive possession exists when a person "knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009) (quotation and emphases omitted). And when a firearm is in "close proximity" to the defendant at the time of arrest, "the inference of dominion and control is particularly strong." *United States v. Grubbs*, 506 F.3d 434, 440 (6th Cir. 2007). So a court needs less "incriminating evidence . . . to corroborate the conviction[.]" *Id.*

That said, "presence *alone*" near a gun doesn't "show the requisite knowledge, power, or intention to exercise control over the gun to prove constructive possession." *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (alteration in original) (quoting *United States v. Birmley*,

529 F.2d 103, 107–08 (6th Cir. 1976)). But "other incriminating evidence, coupled with presence" can "tip the scale in favor of sufficiency." *Id.* (citation omitted).

Although a gun's presence alone may not establish possession, a gun's proximity to ongoing criminal activity may provide enough context to do so. *See id.* For example, if the "bulk" of drug activity took place in a basement, courts can find that the basement may be an "ideal location to stash a firearm . . . to protect those drugs." *United States v. Maliszewski*, 161 F.3d 992, 1018 (6th Cir. 1998); *see United States v. Foster*, 832 F. App'x 401, 405 (6th Cir. 2020) (finding a loaded gun's location near a digital scale and meth to "sufficiently tie[] the gun to the drug offense to which [a] defendant pled guilty").

So courts can "infer[] from [] circumstantial evidence" that a defendant constructively possessed a weapon. *Maliszewski*, 161 F.3d at 1028. And possession can occur even if defendants claim ignorance about having a gun in the first place. *See id.* at 1026 (involving a defendant who "claimed to know '[n]othing at all' about the firearm" (alteration in original)); *United States v. Boyer*, 536 F. App'x 539, 543–44 (6th Cir. 2013) (affirming an enhancement when a defendant claimed he didn't know about a co-defendant's gun in a home that the co-defendant used to own).[1]

Over and over, courts have looked at circumstantial evidence to find possession. Even if a defendant has no "physical control over the weapon," courts can find constructive possession if a defendant "knowingly has the power and intention at a given time to exercise dominion" over the area where authorities found a gun. *United States v. Gardner*, 488 F.3d 700, 713 (6th Cir. 2007) (internal citation omitted). This dominion extends to owning a vehicle. *Birmley*, 529 F.2d at 107.

---

[1]The majority identifies several cases involving direct evidence that a defendant physically possessed a gun or had actual knowledge of the gun. (*See* Majority Opinion, at 4.) That type of evidence no doubt suffices to apply the enhancement, but I don't believe that it's necessary under our caselaw.

It also extends to those who "occupy[] the driver's seat of the seized vehicle." *Id.* (affirming a driver's possession of guns in a car's trunk because he had a key to access the trunk). The bottom line is that district courts must look at the circumstances in a particular case to determine constructive possession. And we review that conclusion with great deference.

## II.

The Presentence Investigation Report recommended that the two-level enhancement apply based on either of two separate incidents. The district court agreed. And in reaching that conclusion, the court did not rely solely on the fact that Wilson "would have access" to a gun. (R. 70, Sentencing Hearing Transcript, at 41.) The court cited ample other evidence to support its conclusion that Wilson constructively possessed firearms.

### A. Wilson's December 2018 Constructive Possession

On December 20, 2018, a traffic stop prompted Wilson to flee from a Ford Fusion. He made a break for it from the driver's seat, leaving the car he was driving behind. In the car, officers found a Smith & Wesson handgun near the driver's seat, as well as drugs, drug paraphernalia, cigarette packs, and receipts in the trunk.

Wilson's dominion over the Ford Fusion supports the gun enhancement. The car was registered in his girlfriend's name, but "Wilson had previously claimed ownership" of it in a police report. (*Id.* at 46.) In an incident where someone vandalized the car, Wilson had "filed a vandalism claim indicating that [he owned] this particular vehicle[.]" (*Id.* at 35.)

Other evidence suggested that Wilson owned the car or, at a minimum, treated the car as his own. To begin, an officer witnessed Wilson, the car's sole occupant, flee from the driver's seat. Then, thanks to a time-stamped receipt found inside the car, the prosecution identified Wilson

after reviewing video footage of Wilson purchasing items at a Dollar General store. Next, cigarette packs in the car had Wilson's fingerprints on them. And his Facebook profile page showed him "with that vehicle in some of the pictures." (*Id.* at 14.)

Thus, the court reasonably found that Wilson exercised "dominion over" the car that contained a gun and the rest of his drug operation. *Gardner*, 488 F.3d at 713; *see Foster*, 832 F. App'x at 405 (affirming an enhancement when a defendant argued he didn't know the trunk had a gun because the court "presume[d]" that the "defendant knew what was in his own car"). And even if the court didn't find that Wilson claimed ownership of the stopped car, he still "occup[ied] the driver's seat" and sat right next to the gun. *Birmley*, 529 F.2d at 107.

At the very least, Wilson's girlfriend owned the car. And we have acknowledged that relationships between a defendant and a significant other suggest that they share a gun. *See United States v. Hardin*, 248 F.3d 489, 498–501 (6th Cir. 2001) (affirming an enhancement even though the firearm was registered in the name of a defendant's wife and purportedly used for her protection); *United States v. Hill*, 79 F.3d 1477, 1485–86 (6th Cir. 1996) (affirming an enhancement when a defendant's girlfriend testified that someone else owned the gun and that she kept it for her protection); *United States v. Richardson*, 510 F.3d 622, 626–27 (6th Cir. 2007) (affirming a defendant's enhancement even though authorities found the stolen gun in his girlfriend's purse in a motel room). So using this "what's mine is yours" reasoning, Wilson had constructive possession of the handgun.

Moreover, in the Ford Fusion, officers found "a quantity of methamphetamine, . . . along with the firearm." (R. 70, Sentencing Hearing Transcript, at 46.) And testimony at the hearing confirmed that the handgun sat "near the driver's seat"—exactly where Wilson fled the car. (*Id.*

at 10.)  Officers also found in the car digital scales, a plastic spoon, a plastic bowl, a ledger pocket notebook, gallon-size plastic bags, Tracfone Wireless pamphlets, and a pill bottle containing about 1,000 pills of various shapes.  (R. 50, Presentence Investigation Report, PageID 88.)

This "other incriminating evidence, coupled with presence" of a firearm "tip[s] the scale in favor of sufficiency." *Arnold*, 486 F.3d at 183 (quoting *Birmley*, 529 F.2d at 107–08).  Wilson's "contact" with the car from which he managed a drug business suggests that he had the gun as part of his operation.  *Grubbs*, 506 F.3d at 440.  Indeed, his proximity to the gun, drugs, and evidence of drug distribution "indicate that [Wilson] had dominion and control over the whole [car]." *Richardson*, 510 F.3d at 627.

In effect, the Presentence Investigation Report, testimony, photographs, receipts, and fingerprints showed that Wilson was conducting a drug business out of his or his girlfriend's car with a gun next to both him and his drug paraphernalia.  (R. 70, Sentencing Hearing Transcript, at 35.)  Given that the court "interpreted the evidence in a manner consistent with the record," I would uphold the enhancement based on this first incident alone.[2]  *Darwich*, 337 F.3d at 664.

---

[2]The majority states that the "district court plainly applied the firearm enhancement based on the rifle in the April 2019 incident alone."  (Majority Opinion, at 8.)  I disagree.  As the majority recognizes, the district court found "the enhancement at paragraph 20 [of the Presentence Investigation Report] would apply[.]"  (Majority Opinion, at 9; *see* R. 70, Sentencing Hearing Transcript, at 69 ("I adopt the presentence report as the factual findings of the [c]ourt in this matter.").)  That paragraph recommends an enhancement because Wilson "possessed firearms on December 20, 2018, and April 5, 2019."  (R. 50, Presentence Investigation Report, PageID 92.)  So the court considered both dates.  And even if it didn't, we "can affirm the district court on alternate grounds supported by the record." *Sw. Williamson Cnty. Cmty. Ass'n v. Slater*, 173 F.3d 1033, 1036 (6th Cir. 1999); *see, e.g.*, *United States v. Binford*, 818 F.3d 261, 267 (6th Cir. 2016).

The majority focuses on one part of the district court's analysis, (Majority Opinion, at 8–9), disregarding the other findings about the December 2018 and April 2019 incidents.  Yes, the court found the December 2018 possession "a closer call."  (R. 70, Sentencing Hearing Transcript, at 46.)  But it never said that Wilson didn't possess the gun next to the driver seat.  And the court found that Wilson had admitted to owning the Ford Fusion—his drug operation on wheels.  (*Id.* ("Wilson had previously claimed ownership of this particular vehicle, and on that date when the vehicle was searched there was a quantity of methamphetamine and other items that were located in the vehicle, along with the firearm.").)  We can affirm based on that finding on clear error review.  *See supra* Part II.A.  That standard requires us to ask, "whether on the entire evidence [we are] left with the definite and firm conviction that a mistake

B.        **Wilson's April 2019 Constructive Possession**

On April 5, 2019, officers detained Wilson in response to a shoplifting call.  Wilson sat in the passenger seat directly behind the driver seat in the F-150 truck.  To his right in the "pocket of the front seat" and "within reach" was a .25 caliber handgun with two rounds of ammunition. (R. 70, Sentencing Hearing Transcript, at 40.)  Also "under the rear seat" lay a Rossi Lever Action 357/38 Special rifle loaded with four rounds of ammunition.  (*Id.*)  The district court found that he had "constructive possession of one or both of those."[3]  (*Id.* at 47.)

Yes, the court cited the presence of these weapons, each in Wilson's reaching distance, in support of the enhancement.  (*Id.* at 40, 47–49.)  But that's not all the court relied on.  Just like Wilson's December 2018 possession, "other incriminating evidence, coupled with presence" of the firearms "tip[ped] the scale in favor of sufficiency."  *Arnold*, 486 F.3d at 183 (quoting *Birmley*, 529 F.2d at 108).  It is not as if the prosecution presented a record "devoid of any . . . evidence." *United States v. Cochran*, 14 F.3d 1128, 1133 (6th Cir. 1994).

---

has been committed."  *United States v. Orlando*, 363 F.3d 596, 603 (6th Cir. 2004) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)).  Looking at the "entire evidence" here, I am not left with the definite and firm conviction that the district court made a mistake in applying the enhancement.  *Id.*

[3]Despite the majority's characterization of the record, (Majority Opinion, at 5 n.3), the district court found that Wilson constructively possessed possibly two guns on the April 2019 incident—the rifle under his seat and the pistol in the backseat pocket to his right.  (R. 70, Sentencing Hearing Transcript, at 46 ("The April 5th, is a little easier, as far as the [c]ourt is concerned, to make a conclusion that Mr. Wilson was, in fact, in constructive possession of one or possibly two of the firearms."); *id.* at 47 ("I think it has been demonstrated that he certainly was in constructive possession of one or both of those.").)  The majority correctly points out that the district court misspoke at one point about where the pistol was located.  But the district court corrected itself, finding that the pistol was in the passenger backseat pocket.  (*Id.* at 48 ("Okay.  Well, I should have said passenger side.").)  And after that correction, the court didn't retract its conclusion on Wilson's possession of the pistol.  It instead discussed Wilson's possession of the rifle under his seat.  (*Id.*)  So we can consider the pistol too.

Like the April incident, the court considered Wilson and the guns' proximity to other items.[4] Officers found Wilson and the guns near drugs, drug money, and drug paraphernalia when they arrested him for drug dealing. Under the front passenger seat immediately next to a third firearm laid a brown pouch that contained the fruits of Wilson's labor. Officers found ecstasy pills, Xanax bars, oxycodone pills, a digital scale, a drug ledger, and a glass pipe spattered with drug residue. And a black zipper pouch located directly next to those things contained methamphetamine and marijuana. Officers also searched Wilson's person and found $649.00, individually wrapped methamphetamine, Xanax bars, suspected ecstasy pills, suspected oxycodone pills, and a black digital scale covered in marijuana residue.

No one can deny that both Wilson and the guns sat in the vehicle where a "bulk" of his drug operation took place. *Maliszewski*, 161 F.3d at 1018. The district court correctly found that the F-150 served as another headquarters for Wilson's drug dealing business. The guns' hiding spots in the truck made it "more or less probable that [they were] possessed in connection with his drug offense." *Id.* Wilson had more than "some contact" with the area where officers found the gun. *Grubbs*, 506 F.3d at 440.

The reality is that "it is not common for people to stash a large supply of drugs" where someone has a rifle and other "firearm[s] at the ready." *Hardin*, 248 F.3d at 500. And all things considered, a factfinder could conclude that beneath his seat or in the backseat pocket to his right

---

[4]The majority states that the "drugs and drug paraphernalia" were "not near [Wilson]," (Majority Opinion, at 7), even though he and the loaded rifle lay no more than a foot or two away from them. Again, I disagree. It's not as if officers found the rifle in "a property down the block, where it could be of zero offensive or defensive use to [Wilson]." *Cf. United States v. Jackson*, 877 F.3d 231, 240 (6th Cir. 2017) (discussing proximity in the context of an enhancement under U.S.S.G. § 2K2.1). Indeed, the rifle and the other two guns in the F-150 sat next to Wilson's drugs and equipment, all while within his mobile drug operation.

were "ideal location[s] to stash a firearm . . . to protect [] drugs." *Maliszewski*, 161 F.3d at 1018; *see Foster*, 832 F. App'x at 405; *see also United States v. Mojica*, 429 F. App'x 592, 595 (6th Cir. 2011) (concluding that a pistol "reasonably appeared to be used to protect the cocaine and had an emboldening role in [a defendant's] intent to traffic the cocaine").

Lastly, the court looked at the guns. It noted that each was loaded. This, paired with the guns' locations, provided a "sufficient nexus between the firearm[s] and the drug activity." *United States v. Stewart*, 306 F.3d 295, 327 (6th Cir. 2002). What's more, the size of a gun matters. The court analyzed the Rossi lever-action rifle's size compared to the other guns in the truck. It reasoned that "we're not talking about some small firearm." And although the court did not say this explicitly, the rifle's large size could have also provided "objective evidence that [Wilson] knew [about] the weapon" right beneath his seat. *Cochran*, 14 F.3d at 1133. Putting two and two together, the court believed the prosecution's evidence that Wilson possessed the guns for his drug business, and he did not prove otherwise.

The majority says that the rifle was inaccessible. But the district court never made that finding. True enough, Wilson's attorney stated that the rifle wasn't "visible" until the seat was "lifted." (R. 70, Sentencing Hearing Transcript, at 43; *see id.* at 44 (attorney saying that the rifle lay "underneath the seat[.]").) And he reiterated that the rifle was "not visible." (*Id.* at 44–45.) That much the district court heard. And it agreed that the rifle was under the seat rather than in plain view. (*Id.* at 48.) But the rifle's *visibility* is different from its *accessibility*. And nothing in the record refers to the rifle's inaccessibility.

Regardless, constructive possession doesn't require a defendant to "keep[] [the rifle] in a place where it is immediately accessible[.]" *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir.

19

2007). To be sure, whether a gun is accessible, visible, or just close by are all relevant. But none alone are necessary to find constructive possession. That's because courts look to the totality of the circumstances. For example, courts can find a defendant to constructively possess an inaccessible weapon even when it is in a "locked safe placed alongside contraband[.]" *United States v. Volkman*, 797 F.3d 377, 391 (6th Cir. 2015). And here, circumstantial evidence could make "it reasonably appear[] that the [loaded] firearms found" in the F-150 were "to be used to protect the drugs or otherwise facilitate a drug transaction[.]" *Hardin*, 248 F.3d at 500 (citation and quotation marks omitted). So even though the guns were out of sight, they were not necessarily out of mind. The evidence here reasonably provided enough context that Wilson "exercise[d] dominion and control over" at least one firearm in the F-150. *Grubbs*, 506 F.3d at 439 (citation omitted).[5]

What's more, the prosecution could have proven Wilson's possession "either directly [through him] or through others." *Id.* (citation omitted). That's why the majority's mention of Wilson's drug-dealing partners doesn't negate his possession. If anything, it bolsters it. And in any event, that others also had access to or dominion over the F-150 doesn't matter. "[T]he law recognizes joint possession" of a gun. *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir.

---

[5]To be clear, a defendant's proximity near a gun doesn't alone prove possession. *See Arnold*, 486 F.3d at 183. But "other incriminating evidence, coupled with presence" can "tip the scale in favor of sufficiency." *Id.* (citation omitted). And "other incriminating evidence" could include a lot of different things. *Id.*; *see also Grubbs*, 506 F.3d at 440 ("When the defendant is found in close proximity to a firearm at the time of the arrest, the inference of dominion and control is particularly strong, and thus the incriminating evidence needed to corroborate the conviction is less."). So while a gun's presence alone might not be enough to prove possession, a gun's proximity to ongoing criminal activity can be. *See id.* And here, guns were found where a "bulk" of Wilson's drug activity took place. *Maliszewski*, 161 F.3d at 1018.

2008); *see, e.g.*, *Hardin*, 248 F.3d at 498–501; *Hill*, 79 F.3d at 1485–86; *Richardson*, 510 F.3d at 626–27. So Wilson and his drug partners could possess the same guns.[6]

Moreover, Wilson pleaded guilty to possession with intent to distribute more than 50 grams of methamphetamine. And those drugs were located inside the F-150.[7] That's what this case is about. In pleading guilty, he admitted to possessing those drugs. All in all, three drug dealers sat next to the three loaded guns in a mobile drug operation. As the court said, "I don't think there is any dispute about what we're talking about." (R. 70, Sentencing Hearing Transcript, at 47.)

In sum, the court didn't just consider the mere presence of Wilson and loaded guns in a truck. It looked at their presence near drugs. It looked at their presence near drug equipment. It looked at their presence within a mobile drug operation. Weighing the totality of the circumstances, the court reasonably found that Wilson possessed at least one gun while drug dealing. And after the court found constructive possession, Wilson did not prove it "clearly improbable" that the firearms were connected in any way to his drug offenses.

\* \* \* \* \*

"It's just one event after the other of drugs and guns, drug[s] and guns, drugs and guns." (*See id.* at 77.) That's what the district court said in this case. And that's right. Reviewing the record, I do not have a "definite and firm conviction" that the court made a mistake in finding that Wilson possessed at least one gun in connection with his drug activity. *United States v. Orlando*, 363 F.3d 596, 603 (6th Cir. 2004) (citation omitted). The high deference we afford the district

---

[6]Just like Wilson in his December 2018 incident, a court could reasonably find that the F-150's owner also possessed the firearms in the truck. *See supra* Part II.A. But that doesn't negate Wilson's simultaneous possession.

[7]The district court found that a search of Wilson and the F-150 uncovered a "quantity of methamphetamine." (R. 70, Sentencing Hearing Transcript, at 71.) Of that quantity, 92.23 grams were inside Wilson's left sock and 17.3 grams lay on the truck floor. And those drugs were next to loaded firearms in Wilson's mobile drug operation.

court in applying sentencing enhancements requires that we affirm the § 2D1.1(b)(1) enhancement.

## III.

Thus, I respectfully dissent.